STATE of Oklahoma ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

M. Michael BUSCH, Respondent.

SCBD No. 3821.

Supreme Court of Oklahoma.

May 25, 1993.

John E. Douglas, Gen. Counsel, Okla-
homa Bar Ass'n, Oklahoma City, for com-
plainant.

C.L. McNeely, Tulsa, for respondent.

HODGES, Chief Justice.

The Oklahoma Bar Association (Bar As-
sociation) filed a three-count complaint
against the respondent, J. Michael Busch,
alleging that the respondent engaged in
misconduct in violation of the Oklahoma
Rules of Professional Conduct. The par-
ties appeared before the Professional Re-
sponsibility Tribunal (PRT) and submitted
Agreed Stipulations of Fact, Conclusions of
Law, and Agreed Recommendation of Dis-
cipline. The PRT accepted the agreement
as to the facts but rather than recommend
the ninety-day suspension from the practice
of law agreed to by the parties, the PRT
recommended the respondent be suspended
for six months.

I. FACTS

The parties tendered the following stipu-
lations:

The respondent agreed to represent a
client in a wrongful termination action.

The respondent did not file the claim but allowed the client to believe that he had. Being uncertain that the statute of limitations had run, the respondent paid the client $3,765 for settlement. The respondent did not inform the client that he should seek independent representation before settling the possible claim against respondent.

The respondent represented the same client in a workers' compensation case. In the process, the client was referred to Dr. L for hearing test. Respondent told Dr. L that he would be paid before the compensation funds were disbursed to the client. On several occasions, Dr. L was told that the check had been mailed or would be immediately mailed.

When Dr. L did not receive payment, he contacted the Bar Association who in turn contacted the respondent. When the Bar Association contacted the respondent, he replied that he had paid the bill even though he had not. Dr. L again notified the Bar Association that the bill was unpaid.

When the Bar Association requested documentation that the bill had been paid, the respondent failed to reply. The Bar Association then sent the respondent a certified letter asking for the documentation. The respondent's secretary telephoned that the respondent was out of town due to sickness in the family. Not until after the Bar Association served a subpoena on the respondent did he pay the bill and respond to the Bar Association's request for documentation.

## II. ENHANCEMENT OF DISCIPLINE

The record and the stipulated facts show that on May 12, 1992, this Court publicly reprimanded the respondent and ordered that he be supervised by a monitoring attorney for one year because of the respondent's neglect of a client's legal matters. On August 24, 1990, the Professional Responsibility Commission privately reprimanded the respondent for failing to respond to a grievance.

## III. MITIGATION

The stipulation contained the following statement of mitigation. At the time that the respondent wrote the check to his client on the wrongful termination case, the respondent was uncertain, under the Workers' Compensation Statute, that the time for filing the claim had lapsed. The respondent contends that his misrepresentation to Bar Association that Dr. L's bill had been paid was inadvertent and was done without the intention to mislead.

The parties also stipulated that the respondent was in litigation which was set for trial on January 20, 1992. The respondent's mother had cancer requiring surgery and he was out of the state for one week at the end of January 1992. Upon discovering the bill to Dr. L was unpaid, the respondent paid the bill and notified the Bar Association. The Bar Association does not contend that the payment to the client for the wrongful termination case was inadequate. We cannot agree that all the statements under "Mitigation" are mitigating factors.

First, the parties stipulated that the respondent was not certain whether, under the Workers' Compensation Act, the statute of limitations had run on the wrongful termination claim before he wrote the check to his client. The parties also stipulated that the respondent violated rule 1.8(h) of the Rules of Professional Conduct which provides:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for the lawyer's personal malpractice, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

If the respondent violated rule 1.8(h), he must have thought at the time that he gave his client the check that the respondent was at least potentially liable to the client. Therefore, this stipulated fact does not mitigate the discipline.

Second, the parties stipulated that upon respondent's discovering the bill to Dr. L had not been paid, he paid the bill and

notified the OBA. The stipulated facts show that, between October 30, 1989 and January 27, 1992, the respondent was contacted six times that the bill had not been paid. Yet he did not pay the bill until he was served with a subpoena on February 12, 1992. Therefore, the record does not support his stipulation.

Third, we do not find that the fact that the respondent was involved in another case since 1984 and set for trial on January 20, 1992, a mitigating factor. Rule 1.16 of the Oklahoma Rules of Professional Conduct provides:

[A] lawyer shall not represent a client ... if:
(1) the representation will result in violation of the Rules of Professional Conduct or other law....

Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

The respondent had known since 1984 that he was involved in another case. If he could not diligently represent the client, he should have declined representation.

■ There are three mitigating factors to which the parties stipulated that have merit. First, there is no charge that the respondent underpaid the client in settlement of the claim. Second, the respondent did not act out of a dishonest or selfish motive. Third, the respondent's mother was ill and he had to be out of town for her surgery. Lack of dishonest or selfish motive and personal problems at the time of misconduct can be factors which are taken into consideration in determining appropriate discipline.

## IV. CONCLUSIONS OF LAW

The parties agreed that the respondent violated the Oklahoma Rules of Professional Conduct, specifically rule 8.4(c) for failing to fully inform his client of the status of the wrongful termination case, rule 1.8(h) for failing to inform his client to get independent legal representation, and rule 8.1(b) for failing to correct a misapprehension and failing to timely respond to a lawful demand for information from a disciplinary authority.

## V. DISCIPLINE

As stated earlier, the stipulated recommended discipline was a ninety-day suspension. The PRT accepted the stipulated facts, enhancement of discipline, mitigation and conclusions of law but rejected the stipulated discipline and recommended a six-month suspension.

Both the Bar Association and the respondent have filed briefs in this Court arguing that the PRT's recommended six-month suspension from the practice of law is too harsh. Both argue that the respondent, through no fault of his own, had not met with his supervising attorney under the terms of his prior discipline by this Court. The parties argue that this Court should consider that working with this supervising attorney may result in the respondent altering his behavior without the six-month suspension.

■ The review of lawyer disciplinary proceedings by this Court is *de novo*. *State ex rel. Okla. Bar Ass'n v. Colston*, 777 P.2d 920, 923 (Okla.1989). Two purposes of attorney discipline are to preserve confidence and trust in the bar and to protect the public and the courts. *State ex rel. Okla. Bar Ass'n v. Peveto*, 620 P.2d 392, 394 (Okla.1980). Part of that purpose is deterrence of misconduct by both the lawyer being disciplined and other members of the bar. *State ex rel. Okla. Bar Ass'n v. Denton*, 598 P.2d 663, 665 (Okla.1979).

■ After reviewing this matter *de novo*, we agree with the parties that a six-month suspension is too harsh. The Bar Association's point is well taken that at the time of the hearing on this matter, the respondent had not met with the monitoring attorney. This failure was not the fault of the respondent but rather a result of Bar Association's actions. Also aside from failing to file a timely response, the respondent was very cooperative with the Bar Association during its investigation. Because of these factors, we find that a

ninety-day suspension plus an additional year probation is the appropriate discipline. The one-year probation will allow time to determine if working with a monitoring attorney will alter the respondent's pattern of behavior.

## VI. COSTS

The Bar Association has filed a motion to tax costs. The respondent has not objected to the motion. Pursuant to rule 6.16 of the Rules Governing Disciplinary Proceedings, this Court finds that costs of this proceeding should be taxed against the respondent in the amount of $997.18.

## VII. CONCLUSION

Because of the current violations and because the respondent has a pattern of neglecting matters associated with his practice of law, the COURT ORDERS;

(1) The respondent is suspended from the practice of law for ninety days, suspension to begin on the date this decision becomes final;

(2) The respondent is placed on probation for one year, probation to begin immediately upon the completion of the ninety-day suspension;

(3) The respondent shall continue to participate in the Lawyers Helping Lawyers until the end of his probation; and

(4) The respondent shall pay $997.18, the costs of these proceedings, within ninety days from the date this decision becomes final.

The respondent's probation is subject to the following conditions:

(1) The respondent shall abide by the Rules of Professional conduct;

(2) The respondent shall cooperate with the Office of the General Counsel in any investigation of allegations of unprofessional conduct which have or may come to the General Counsel's attention. Any request by the General Counsel for information from the respondent shall be by certified mail. The respondent shall respond to any such request within ten days from the day he receives the request;

(3) The respondent shall continue to be supervised by a member of the Lawyers Helping Lawyer's committee throughout the terms of his suspension and probation. Respondent's supervisor shall be required to immediately report to the Office of the General Counsel any violations of the probationary conditions by respondent.

If at any time during the probation the General Counsel concludes that the respondent has not complied with the terms and conditions of his probation, then the Office of the General Counsel may file an application to revoke probation with the original trial panel. Notice of the filing of the application shall be mailed to the respondent by certified mail. A hearing shall then be scheduled with the PRT and a determination shall be made as to whether respondent has violated the terms and conditions of the probation. If the PRT determines there is no violation, then the probation shall continue. If the trial panel finds a violation did occur, then a recommendation shall be made to the Supreme Court for proper discipline.

RESPONDENT SUSPENDED FROM PRACTICE OF LAW FOR NINETY DAYS, PLACED ON PROBATION FOR ONE YEAR THEREAFTER, AND ORDERED TO PAY COSTS.

OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

LAVENDER, V.C.J., concurring in part, dissenting in part.

I would not put respondent on probation.

WATT, J., with whom SIMMS and HARGRAVE, JJ., join, dissenting.

I would suspend respondent for a period of six months.