STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Darrell L. BOLTON, Respondent.

OBAD No. 1127.
SCBD No. 3960.

Supreme Court of Oklahoma.

May 17, 1994.

---

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Darrell L. Bolton, Pro se.

OPALA, Justice.

In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Is the record[1] sufficient for a meaningful *de novo* consideration of the complaint's disposition? and (2) Is a ninety-day suspension with imposition of costs an appropriate disciplinary sanction to be imposed for respondent's breach of professional discipline? We answer both questions in the affirmative.

The Oklahoma Bar Association [Bar] charged Darrell L. Bolton [respondent or Bolton] with four counts[2] of professional misconduct. After a hearing, a PRT panel made

---

1. The record consists of a transcript of the PRT's hearing and of *Stipulated Findings of Fact and Conclusions of Law and Agreed Recommendation for Discipline,* submitted by the respondent and the Bar [but not followed by the PRT].

2. The complaint contains a fifth count, captioned "Enhancement of Discipline", which rests on two previous matters for which the respondent has been disciplined. On January 14, 1983 Bolton was privately reprimanded for providing substandard representation [neither competent nor zealous]. On May 2, 1989 respondent was publicly censured for allowing a client to use his trust account to defraud members of the public.

findings of fact and conclusions of law together with a recommendation of discipline. The PRT ruled Bolton violated Rules 1.3, 1.4, 3.2, and 8.1 of the Oklahoma Rules of Professional Conduct[3] and Rule 5.2 of the Rules Governing Disciplinary Proceedings.[4] With the respondent's concurrence, the Bar recommended that he be suspended from the practice of law for *ninety days*. The PRT rejected this recommendation, counseling that the appropriate sanction should be a one-year suspension and the payment of the costs of this proceeding.

## FACTS ADMITTED BY STIPULATION[5]
### COUNT I

■ In 1991 Sherry Long [Long] retained the respondent to secure a divorce.[6] He filed

> In the latter cause the respondent was disciplined for neglecting a legal matter entrusted to him and for failing to maintain the integrity of the legal profession.

3. The pertinent terms of Rules 1.3, 1.4, 3.2 and 8.1, Oklahoma Rules of Professional Conduct, 5 O.S.1991 Ch. 1, App. 3–A, state:
> "Rule 1.3. **Diligence.**
> A lawyer shall act with reasonable diligence and promptness in representing a client."
> "Rule 1.4. **Communication.**
> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."
> \* \* \* \* \* \*
> "Rule 3.2. **Expediting Litigation.**
> A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."
> \* \* \* \* \* \*
> "Rule 8.1. **Bar Admission and Disciplinary Matters.**
> [A] lawyer ... in connection with a disciplinary matter, shall not:
> (b) ... knowingly fail to respond to a lawful demand for information from [a] ... disciplinary authority...."

4. The pertinent terms of Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1–A, state:
> "After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall ...
> (2) file and serve a copy of the grievance ... upon the lawyer, who shall thereafter make a written response which contains a full and fair

a petition in October 1991 but took no further action [to Long's knowledge] until May 1992 when she received from him a set of interrogatories. While the respondent had received the interrogatories almost thirty days earlier, he gave Long only one night to prepare her responses.

In May 1992 respondent informed Long that he would move for a pre-trial conference and that they would go to court the day after she returned from a planned vacation. In July 1992 Long's mother called to inquire when she had gone to court as she had read in the newspaper that the divorce had been granted.

Being unaware of the divorce decree, Long called the respondent and left a message that

> disclosure of all the facts and circumstances pertaining to the lawyer's alleged misconduct unless the respondent's failure to do so is predicated upon expressed constitutional grounds.... *The failure of a lawyer to answer within twenty days (20) after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline.*"

5. The *Stipulated Findings of Fact and Conclusions of Law and Agreed Recommendation for Discipline* contains several references to the Tulsa County Bar Association's Grievance Committee and its interaction with the respondent.

> Rule 3.2(i), Rules Governing Disciplinary Matters, 5 O.S.1991 Ch. 1, App. 1–A, states in pertinent part:
> "Rule 3.2 **Duties.**
> The General Counsel of the Oklahoma Bar Association shall have the following powers and duties in the area of discipline under these Rules:
> (i) To use the services of other members of the Oklahoma Bar Association (including, but not limited to, any state or county Bar grievance committee) in carrying out the duties imposed upon the General Counsel concerning the general supervision of all disciplinary matters affecting lawyers.
> Here, there is nothing in the record indicating that the Office of the General Counsel sought the assistance of the Tulsa County Bar Association's Grievance Committee. Under these circumstances no sanction can attach to respondent's failure to cooperate with that committee.
> For an example of the General Counsel utilizing the services of a county bar association's grievance committee, see *State v. Hood*, Okl., 406 P.2d 978, 979 (1965).

6. Long paid respondent a retainer of $500.00.

she had seen the published notice of the divorce. Bolton returned her call indicating that he was not aware of the events in her case but would inquire about them and report back to her. Bolton later told Long that the court had conducted a pre-trial hearing, while Long was out of town on vacation, at which neither respondent nor Long appeared. The court granted a divorce to Long's husband on July 7, 1992.

Next, Long discussed vacating the decree of divorce with the respondent. Long decided not to contest the default decree since she felt its terms were fair.[7] During their last consultation Long asked respondent to secure a previously-requested judicial approval of name change and to give her advice about the payment of certain bills which the court had allocated between her and her husband. Respondent wholly failed to secure Long's name change and never gave her the requested advice for the payment of the bills.

### COUNT III

Patsy Ann Irby [Irby] retained Bolton to represent her in a divorce and paid him a retainer of $1,000.00.[8] Irby had previously hired other counsel to represent her in this action. She became dissatisfied with his services and discharged him after he had failed to serve on opposing counsel her answers to interrogatories. Irby then had her first counsel furnish respondent her previously prepared responses and asked Bolton to serve them on opposing counsel—which he failed to do.[9] On February 21, 1992 opposing counsel filed a motion for order compelling discovery to secure the requested responses.

Respondent never served Irby's answers to the interrogatories. During the pendency of the divorce proceeding respondent never secured a modification of the temporary order granting custody to provide for child support. He did not reasonably keep his client informed about the status of her matter and failed diligently to pursue a disposition of the divorce.

### COUNTS II AND IV

 Both Long and Irby filed grievances with the *Tulsa County Bar Association*.[10] On February 4, 1993 these grievances were forwarded to the Bar's General Counsel.[11] On March 17, 1993 the Office of

7. The divorce decree's provisions comported with the terms of a proposed settlement which Respondent had communicated to opposing counsel.

8. Respondent returned $350.00 of Irby's retainer upon being discharged. He testified that he did this in a spirit of conciliation and before notification of any Bar complaint filed against him.

9. Respondent testified that he had discussed with Mr. Stubblefield, counsel for Irby's husband, the form of Irby's answers to the interrogatories. He informed Mr. Stubblefield that modifications would be necessary before the answers could be served. Respondent was unable to make the necessary modifications before he was discharged.

10. During the PRT hearing respondent testified that he was not a member of the Tulsa County Bar Association. Joe Kennedy, Presiding Master of the PRT panel, and Bolton engaged in the following colloquy:

[by Master Kennedy]
"Q. I didn't mean really to emphasize I guess as much on the docket as was in your complete and total failure to respond to your own Tulsa County Bar Association, and more especially and important to me the Oklahoma Bar Association.

[by respondent]
A. Sure.
Q. Which is your true licensing father.
A. Right. I'm not a member of the Tulsa County Bar Association.
Q. You are by an act of the Supreme Court, you're a member of the Tulsa County Bar Association, if that's where you practice.
A. I practice in Tulsa, I'm not a member.
Q. You may not choose to be but you are as far as I'm concerned.
[Transcript pg. 9] .

There is no rule of this court mandating involuntary membership in a *county bar association*. The Master was mistaken in his conclusion that respondent held a Tulsa County Bar Association membership and was amenable to any disciplinary process of that association. *See supra* note 5, where we discussed the absence *from the record* of any request by the Office of the General Counsel under Rule 3.2(i) for assistance from the Tulsa County Bar Association's Grievance Committee.

11. When information about a lawyer's alleged misconduct reaches any officer of the Bar, it is his or her obligation to refer that information to the Office of the General Counsel. It is not necessary that the injured client complain *directly* to the Bar's General Counsel. See *State ex rel. Okl. Bar Ass'n v. Raskin, infra* note 13, 642 P.2d 262, 265 (1982).

the General Counsel mailed to Bolton, at his current roster address, notice that the General Counsel was initiating a grievance based upon the complaints of both Long and Irby. This notice advised him that he should respond within twenty (20) days.[12] *Bolton did not respond.* On April 12, 1993 the Office of the General Counsel informed the respondent by certified mail that he should file a written response within five (5) days of receiving the certified letter. *Bolton again did not respond.*

When respondent did not file a response to the second letter, the Professional Responsibility Commission issued a subpoena *duces tecum* commanding him to appear for deposition at 10:00 a.m. on May 3, 1993. Respondent called at 8:50 a.m., May 3, 1993 and asked that the deposition be rescheduled for May 11, 1993. Bolton's deposition was taken on the later date.

### COUNT V

On January 14, 1983 respondent was privately reprimanded by the Professional Responsibility Commission for providing a client representation which was neither competent nor sufficiently zealous.

On May 2, 1989 this court publicly censured the respondent for professional conduct which offended the integrity of the profession and for neglecting a legal matter entrusted to him.

### ADDITIONAL FACTS

In addition to the facts admitted by stipulation the PRT found that the respondent did

12. Bolton testified that he and his family were not residing at his current roster address when the first notice was mailed but rather were living in the residence of his parents.

13. *State ex rel. Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 265 (1982); *Tweedy v. Okl. Bar Ass'n,* Okl., 624 P.2d 1049, 1052 (1981); *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113, 114 (1939).

14. *State ex rel. Okl. Bar Ass'n v. Lloyd,* Okl., 787 P.2d 855, 858 (1990); *Okl. Bar Ass'n v. Stubblefield,* Okl., 766 P.2d 979, 982 (1988); *State ex rel. Okl. Bar Ass'n v. Cantrell,* Okl., 734 P.2d 1292, 1293 (1987); *Raskin, supra* note 13, 642 P.2d at 265–266. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudi-

not show sufficient remorse or accept responsibility for his actions. It was also the PRT's finding that respondent had not implemented office procedures which would prevent the recurrence of conduct similar to that of which the Bar was currently complaining.

### AGREED CONCLUSIONS OF LAW

The parties' stipulation concedes that the respondent's conduct violates the mandatory provisions of Rules 1.3, 1.4, 3.2 and 8.1, Oklahoma Rules of Professional Conduct, and Rule 5.2, Rules Governing Disciplinary Proceedings, and constitutes grounds for professional discipline.

### I

### THE RECORD BEFORE THE COURT IS COMPLETE FOR A *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

The Oklahoma Supreme Court has exclusive original jurisdiction over Bar disciplinary proceedings.[13] The court's review is conducted by *de novo* consideration of the prosecution brought before us.[14] Neither the stipulations of the parties nor the PRT panel's findings or assessments regarding the weight or credibility of the evidence can bind this court.[15] In a *de novo* consideration, in which the court exercises its constitutionally invested, nondelegable power to regulate both the practice of law and the legal practitioners,[16] a full-scale exploration of all relevant facts is mandatory.[17]

cative process must be supervised by our *de novo* consideration. This attribute of nondelegable jurisdiction serves to distinguish Bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record. The latter stands for an independent, non-deferential examination of another tribunal's record.

15. *Raskin, supra* note 13, 642 P.2d at 265.

16. *Raskin, supra* note 13, 642 P.2d at 266; *Tweedy, supra* note 13, 624 P.2d at 1052.

17. *State ex rel. Okl. Bar Ass'n v. Dugger,* Okl., 385 P.2d 486 (syllabus) (1963).

■ The court's task cannot be discharged unless the PRT panel submits a complete record of proceedings for a *de novo* examination of all pertinent issues.[18] Our responsibility is hence to ensure that the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline [19] that would avoid the vice of visiting disparate treatment on the respondent-lawyer.[20]

■ The record is adequate for our *de novo* consideration of Bolton's alleged professional misconduct.

## II

## DISCIPLINE

■ The complaints and alleged violations before us are cumulative. Bar matters often deal with multiple episodes of misconduct. The public's interest in maintaining competent legal representation is best served by examination of a practitioner's performance over a span of time and an inquiry into one's professional history.[21] If that history should reveal a pattern of misconduct, it will be a factor in tailoring the appropriate discipline.[22] When examining Bolton's offending performance and searching for the appropriate sanction, we must consider the counts, now on review, against the background of his past *established pattern of neglect.* Neither the parties' stipulations nor the PRT's findings and recommendations are binding upon us.[23]

## III

## A NINETY–DAY SUSPENSION, RECOMMENDED BY GENERAL COUNSEL, IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PAST PROFESSIONAL MISCONDUCT

■ The court's responsibility in exercising its disciplinary jurisdiction is not to punish but *to inquire into the lawyer's continued fitness,* with a view to safeguarding the interest of the public, of the courts and of the legal profession.[24] Justice Irwin stated this principle when he said for the court:

Bearing in mind that licensure to practice law is not for the benefit of the individual member of the profession, but rather for the benefit of the public, the primary consideration in determining whether a lawyer is to be disciplined, concerns the welfare of the public....[25]

18. Rule 6.13, Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A. Rule 6.13, provides in part that:
 "... [T]he Trial Panel shall file with the Clerk of the Supreme Court a written report which *shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law...."* [Emphasis added.]

19. A complete record is essential for review of a Bar disciplinary proceeding. The material to be reviewed is never to be deemed settled beyond our ability to expand it. The record always remains within this court's plenary power to expand by an order calling for its supplementation. *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 794 P.2d 403, 404 (1990); *State ex rel. Okl. Bar Ass'n v. Samara,* Okl., 683 P.2d 979, 983 (1984); *State ex rel. Okl. Bar Ass'n v. Warzyn,* Okl., 624 P.2d 1068, 1071 (1981). *See State ex rel. Okl. Bar Ass'n v. Armstrong,* Okl., 791 P.2d 815, 816 (1990), which teaches that an interim suspension of a lawyer cannot be made on an incomplete record. The same problem confronted this court in *State ex rel. Okl. Bar Ass'n v. Lloyd,* SCBD No. 3455, received November 17, 1987 [*Lloyd I*]. There, we declined to accept the trial panel's recommendation and returned the case for a full evidentiary hearing before the panel whence it came. For an explanation, see *Lloyd, supra* note 14, 787 P.2d at 856 [*Lloyd II*].

20. *State ex rel. Okl. Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 630 (1990).

21. *State ex rel. Okl. Bar Ass'n v. Lowe,* Okl., 640 P.2d 1361, 1362 (1982).

22. *State ex rel. Oklahoma Bar Ass'n v. Downing,* Okl., 804 P.2d 1120, 1123 (1990); *State ex rel. Oklahoma Bar Ass'n v. Peveto,* Okl., 730 P.2d 505 (1986); *Lowe, supra* note 21, 640 P.2d at 1362.

23. *Downing, supra* note 22, 804 P.2d at 1122; *State ex rel. Okl. Bar Ass'n v. Braswell,* Okl., 663 P.2d 1228, 1230 (1983).

24. *State ex rel. Okl. Bar Ass'n v. Donnelly,* Okl, 848 P.2d 543, 545–46 (1992); *State ex rel. Okl. Bar Ass'n v. Colston,* Okl., 777 P.2d 920, 925 (1989); *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 682 P.2d 205, 207 (1983); *State ex rel. Okl. Bar Ass'n v. Harlton,* Okl., 669 P.2d 774, 777 (1983); *Raskin, supra* note 13, 642 P.2d at 267.

25. *See, Lowe, supra* note 21, 640 P.2d 1361, 1363 (1982), quoting *OBA v. Smith,* 615 P.2d 1014, 1018 (1980).

The circumstances of a lawyer's alleged professional misconduct (Rule 6)[26] are important in searching for solutions that would accord with the law's imperative of ensuring the public its due protection from substandard lawyers.[27] The complaint against Bolton was pressed as a Rule 6 proceeding, which focuses on the lawyer's *offending past conduct*.[28]

Bolton has been charged with (1) lacking diligence and promptness in representing his clients,[29] (2) not keeping his client informed,[30] (3) neglecting his clients by not expediting litigation consistently with their interests,[31] and (3) failure to comply with the Rules Governing Disciplinary Proceedings by responding *untimely* to the Bar's inquiry.[32] Professional competence—*i.e.,* acting promptly in pending matters and communicating with a client—is a *mandatory obligation* imposed upon licensed practitioners. Albeit onerous, this obligation is the *very minimum* to be expected from a lawyer. It epitomizes professionalism. Anything less is a breach of a lawyer's duty to serve the client.[33] As reflected by the record, Bolton's conduct represents a marked departure from these standards.

The facts admitted by the respondent's stipulation,[34] coupled with the findings of the PRT, sufficiently evidence that Bolton's pattern of behavior is at odds with the standard of legal representation to which the public is entitled. On *de novo* review the four counts of the Bar's complaint are found supported by clear and convincing record proof.

A lawyer's license is a certificate of professional fitness to deal with the public as a legal practitioner. *Public confidence in the practitioner is essential to the proper functioning of the profession.* A lawyer's misconduct adversely reflects on the entire Bar because it exhibits a lack of commitment to the clients' causes, to the courts, and to other members of the Bar. Bolton's actions call for the imposition of discipline.

In light of the respondent's established history of neglect,[35] the General Counsel's recommendation that Bolton be suspended from the practice of law for ninety days is accordingly approved.[36] *Bolton shall pay the*

26. Rule 6 (Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal), Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A. A Rule 6 proceeding focuses on the lawyer's *past professional misconduct.*

27. *Donnelly, supra* note 24 at 547–48.

28. This approach, which is necessary to safeguard public interest and to protect the judicial system, is designed to deter the respondent from offending behavior in the future and to discourage other members of the Bar from like derelictions. *State ex rel. Okl. Bar Ass'n v. Arnett,* Okl., 815 P.2d 170, 171 (1991); *State ex rel. Okl. Bar Ass'n v. Denton,* Okl., 598 P.2d 663, 665 (1979).

29. Rule 1.3, Oklahoma Rules of Professional Conduct, *supra* note 3.

30. Rule 1.4, Oklahoma Rules of Professional Conduct, *supra* note 3.

31. Rule 3.2, Oklahoma Rules of Professional Conduct, *supra* note 3.

32. Rule 5.2, Rules Governing Disciplinary Proceedings, *supra* note 4. *See also* Rule 8.1, Oklahoma Rules of Professional Conduct, *supra* note 3.

33. *Raskin, supra* note 13, 642 P.2d at 267.

34. When the PRT rejected the Bar's recommendation of a ninety-day suspension, the respondent was given an opportunity to withdraw his *Stipulated Findings of Fact and Conclusions of Law and Agreed Recommendation for Discipline.* Respondent *declined* to withdraw his admissions and the PRT accepted the stipulation. *See Downing, supra* note 22, 804 P.2d at 1122; *see also State ex rel. Okl. Bar Ass'n v. Perkins,* Okl., 757 P.2d 825, 830 (1988).

35. *See supra* note 2.

36. For the purpose of choosing the appropriate sanction to be imposed, recommended discipline for a respondent's misconduct is often compared with the disposition made in like cases decided in the past. This ensures that the discipline meted out by the court is consistent with that imposed by us in similar cases. *See State ex rel. Oklahoma Bar Ass'n v. Busch,* Okl., 853 P.2d 194, 1995–96 (1993); *State ex rel. Oklahoma Bar Ass'n v. Cummings,* Okl., 863 P.2d 1164, 1174–75 (1993); *Downing, supra* note 22, 804 P.2d at 1123.

*costs incurred in this proceeding in the amount of $825.89.*

Respondent stands suspended from the practice of law for ninety days from the day this opinion becomes final. As a precondition to his reinstatement, he must pay the costs incident to this disciplinary prosecution.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

SIMMS and WATT, JJ., concur in part and dissent in part.

SIMMS, Justice, concurring in part and dissenting in part.

I concur that the respondent should be suspended; however, I would accept the recommendation of the Professional Responsibility Tribunal and suspend respondent for a period of one year.

WATT, Justice, concurring in part and dissenting in part.

I concur that respondent should be suspended but I would impose a suspension of greater duration.