PER CURIAM,
¶ 1 In this reciprocal disciplinary proceeding against a lawyer, the issues to be decided are (1) Does the record submitted for our examination provide sufficient evidence for a meaningful de novo consideration of the charge against respondent and of its disposition? [1] and (2) Is public censure an appropriate disciplinary sanction for respondent's breach of professional ethics? We answer both questions in the affirmative.
I
INTRODUCTION TO THE RECORD
T2 On 14 January 1998, the United States Court of Appeals for the Tenth Cireuit (the Tenth Circuit) disbarred William J. Patterson (Patterson or respondent), a lawyer licensed to practice in Oklahoma, for practis-ing law while under an order of suspension. Respondent did not notify the Oklahoma Bar Association (the Bar or complainant) that discipline bad been imposed upon him in another jurisdiction as required by Rule 7.T(a) of the Rules Governing Disciplinary Proceedings (RGDP).[2] The Bar was notified of respondent's disbarment by the Tenth Circuit Court Clerk's office. After an initial exchange of letters between respondent and the Bar, the Bar initiated this reciprocal disciplinary proceeding against respondent pursuant to RGDP Rule 7.7(b) [Rule 7.7(b) or the reciprocal disciplinary rule].[3]
13 The court then ordered respondent to show cause why reciprocal discipline should not be imposed. Upon consideration of the *554 briefs submitted by the parties, the court concluded that the record was insufficient for the disposition of the charge and ordered an adversarial hearing before a trial panel of the Professional Responsibility Tribunal.
T4 A hearing was held on 8 February 1999, after which the trial panel issued a report containing its findings of fact, conclusions of law, and a recommendation for discipline. The trial panel concluded that respondent had violated the terms of RGDP Rule 7.7(a) by failing to notify the Bar that disciplinary action had been taken against him in the Tenth Circuit, but that the violation was the result of respondent's ignorance of the rule and was therefore not a deliberate effort at concealment. The panel also concluded that respondent had practiced law during a period of suspension, but that there was "sufficient confusion surrounding the original suspension order giving rise to the subsequent disbarment order" that respondent's degree of culpability for his disbarment was difficult to assess. The panel recommended public censure as the appropriate disciplinary measure. Respondent has agreed to pay the costs of this proceeding.[4]
II
THE RECORD BEFORE THE COURT CONTAINS SUFFICIENT EVIDENCE FOR A MEANINGFUL DE NOVO CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING
15 The instant proceeding is predicated on misconduct previously adjudicated in another jurisdiction. Respondent is therefore subject to the reciprocal disciplinary procedure set forth in Rule 7.7(b)[5] That rule authorizes the Bar to initiate disciplinary proceedings in this state whenever discipline has been imposed upon a lawyer by another state's highest court or by a federal court. The reciprocal disciplinary process is commenced when the Bar forwards to the Chief Justice a certified copy of the other jurisdiction's disciplinary order. Rule 7.7(b) states that the foreign order:
"*... shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described. The lawyer may submit a certified copy of the transcript of the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was mot supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma." (emphasis added)
T6 The above-quoted portion of Rule 7.7(b) delimits the extent to which a respondent may challenge the adjudication of the other jurisdiction. A bar disciplinary proceeding is sut generis.[6] Because it is not civil in nature, neither the full faith and credit doctrine, which affords preclusive effect to the judgments of our sister-state courts,[7] nor any related doctrine giving similar preclusive effect to the judgments of fed *555 eral courts [8] requires us to accord interjfuris-dictional preclusion to the Tenth Circuit's adjudication of misconduct. A bar disciplinary case is more in the nature of a penal proceeding to which the rules governing in-terjurisdictional preclusion in civil cases do not apply.[9] The extent to which interjurisdie-tional preclusion is afforded in the context of a reciprocal disciplinary proceeding is mandated by the reciprocal disciplinary rule alone, which limits the respondent's attack on the other jurisdiction's fact-finding to the evidence contained in a certified copy of the transcript of the other jurisdiction's proceedings. Hence, the facts that resulted in the imposition of discipline by the other jurisdiction cannot be relitigated, but only reviewed within the context of the evidence previously presented in the other jurisdiction.[10] Respondent's failure to respond in this case to the Tenth Circuit's show-cause order preceding his disbarment leaves him without a tran-seript to submit for our consideration. He is therefore bereft of any basis upon which he may challenge the prima fucie evidence of misconduct provided by the order disbarring him.
«7 Beyond this rather limited scope of attack on the other jurisdiction's adjudication, the range of permissible inquiry in a reciprocal disciplinary proceeding stands confined to issues that are germane to the mitigation or severity of the bar disciplinary sanction which is to be visited upon the respondent.[11]
T8 Having initially found the record to be insufficient for a determination of the appropriate disciplinary sanction, we returned this matter to a trial panel of the Professional *556 Responsibility Tribunal with directions to conduct an adversarial hearing at which respondent's misconduct could be thoroughly explored and his explanations and defenses aired.[12] The record of that hearing is now before us and we find that it is adequate for our de novo consideration of the appropriate measure of discipline to be imposed upon respondent for his professional misconduct.
III
FACTUAL BACKGROUND
9 In 1998, respondent came to represent two clients before the Tenth Cireuit, Lloyd Michael Reid and David Kirkland Deanovich. Because an issue in both clients' appeals was the adequacy of respondent's representation below, respondent attempted to withdraw from both cases. He was not permitted to do so, and the conflict kept him from submitting appellate briefs for either client. The Tenth Cireuit eventually removed him from both cases and ordered him to show cause why he should not be disciplined for his neglect. Patterson did not respond to the court's show-cause order, relinquishing the opportunity to explain his failure to prosecute the appeals. The Tenth Circuit suspended respondent from the practice of law.
' 10 In 1997, respondent represented a tax protester named Ralph Bailey before the United States District Court for the Northern District of Oklahoma. Although Bailey filed his notice of intent to appeal pro se, the Tenth Cireuit Court Clerk's office began corresponding with respondent as Bailey's attorney. Upon receiving letters from the clerk's office that certain documents had to be filed or Bailey's appeal would be dismissed, respondent chose to file those documents despite his suspended status.
{11 During the pendency of Bailey's appeal, respondent became involved in the Tenth Cireuit with a second appellant named Dennis Eidson. Having been pressed by the clerk's office to proceed with Bailey's appeal, and having received no indication from the Tenth Cireuit that there would be negative consequences for having done so, respondent says he mistakenly believed that he could go ahead and handle Eidson's appeal as well.
12 He was wrong. In October 1997, the Tenth Circuit ordered respondent to show cause why he should not be disciplined for practising law during a period of suspension. Patterson did not respond to the court's order and on 14 January 1998 he was disbarred by the Tenth Cireuit.
IV
PATTERSON'S RESPONSE TO THE CHARGES AGAINST HIM
T 13 Under RGDP Rule 7.7(a),[13] a lawyer must inform the Bar whenever discipline has been imposed upon him in another jurisdiction. Respondent acknowledges having received contemporaneous notice of his disbarment, but claims he was unaware of his notification obligation. Consequently, he did not advise the Bar that the Tenth Circuit had suspended him in 1994, nor did he apprize it of his disbarment in 1998. Respondent's failure on two occasions to notify the Bar of the Tenth Circuit's actions is itself grounds for discipline.[14]
I 14 Upon receiving notice of respondent's disbarment, the Bar sent Patterson a letter informing him of the possibility of reciprocal discipline in Oklahoma. Respondent immediately sought legal assistance from an attorney named Charles Seger. In addition to agreeing to handle the matter with the Bar, Seger also agreed to represent respondent in *557 the Tenth Cireuit. Unbeknownst to respondent, Seger was not admitted to practice before that court. Seger sent a letter dated 24 April 1998 to the Bar setting out respondent's explanation for the conduct which had resulted in his disbarment. Seger testified that he also mailed a copy of the letter to the Tenth Circuit, but he was unable to produce any physical proof of mailing,. The letter contained misstatements of fact. Both Seger and respondent agree that respondent did not review the letter before it was sent, and only sometime later discovered that the letter contained errors.
15 Respondent testified that from April 1998 until he learned otherwise from the Bar . in April 1999 he believed that Seger had filed a motion in the Tenth Cireuit for a reconsideration of his disbarment. Respondent testified that Seger repeatedly told him that they were waiting for a response from the Court to the motion. Seger denies ever saying or implying that he had filed a motion. Seger claims that when he stated to respondent throughout 1998 and early 1999 that he was waiting to hear from the Tenth Cireuit, he was only referring to a response from the Tenth Circuit to the copy he had sent of the 24 April 1998 letter to the Bar.
16 Respondent testified that on or about 12 January 1999 Seger came to his office and told him that they had heard nothing from the Tenth Circuit because they had failed to include a verification with the "motion." He presented a verification form to respondent who signed it despite never having seen the motion to which the verification referred.
{17 On 1 March 1999, after being admitted to practice in the Tenth Circuit, Seger filed a motion for reconsideration of respondent's disbarment. It, too, contained inaceu-racies and misrepresentations. It was promptly denied.
y
STATEMENTS MADE BY RESPONDENT THAT WERE MISLEADING OR INCONSISTENT
[ 18 The trial panel report points out that three statements made by respondent, two in his initial brief to this court and one in the motion to reconsider filed on 1 March 1999 by Mr. Seger in the Tenth Circuit, were not supported by the record. The trial panel gave respondent an opportunity to explain these statements. After hearing the evidence and reviewing documents, the trial panel concluded that respondent had satisfactorily explained all three inaccuracies and stipulated to the facts that gave rise to that conclusion. We agree that respondent has satisfactorily explained two of the three.[15] As for the third statement, we agree that respondent has explained the narrow issue framed by the trial panel, but we discern in the statement the presence of a larger issue that remain inadequately elucidated.
119 When a stipulation is offered to this court in a bar disciplinary proceeding, it is incumbent upon us to determine if it accords with the applicable law and with the record in the case.[16] In his initial brief to this court, respondent stated that he believed applying for reinstatement before practising again in the Tenth Cireuit was "merely a formality" that "could be taken care of in a routine manner." The veracity of this statement was brought into question when the Bar reviewed the motion to reconsider filed *558 in the Tenth Cireuit by Mr. Seger on 1 March 1999. In that document, as well as in the 24 April letter he sent to the Bar, Seger described a conversation respondent had with the clerk's office in mid-April 1997, in which he "was told he should have an Application to be Reinstated on file before representing clients in that court." (emphasis added) If this was an accurate representation of what respondent was told in mid-April, then he could not have had an honest belief that resuming practice without first being reinstated was permissible when in mid-May he filed Bailey's appellate brief.
[ 20 Respondent asserts that he was never told that he had to have an application on file before resuming practice. Instead, he contends that a Deputy Court Clerk told him that "he should have had an Application to be Reinstated on file before representing clients in that Court." The record supports respondent's claim that this statement was made to him, but not in the mid-April conversation. Rather the record reflects that the statement by the Clerk that respondent should have had an application on file was made to him in the last conversation he had with the clerk's office, which took place in mid-May (or later) after respondent had filed Bailey's appellate brief Hence, that statement could have no bearing on what respondent reasonably believed about the necessity of reinstatement before he filed documents in Bailey's appeal. Neither the timing nor the contents of any other contacts respondent had with the clerk's office about reinstatement are presented in the record and we will not speculate on what might have been said in any such conversations.
{21 Because we are not here relitigating the facts underlying respondent's disbarment, it is not absolutely necessary that we decide whether respondent had or did not have a reasonable belief that reinstatement did not have to precede the resumption of practice. It is enough for our purposes that respondent has failed to explain fully to us the circumstances by which he says he came to hold this belief. Without that elucidation, we cannot give much weight to this explanation in assessing an appropriate discipline.
VI
CIRCUMSTANCES TO BE CONSIDERED IN MITIGATION OF THE CHARGES
A.
Mitigating Factors Submitted by Stipulation Which Are Supported by the Record
122 On or about 1 September 1993, the date the Tenth Circuit ordered respondent to show cause for his failure to proceed with the Reid and Deanovich appeals, respondent's law partner was hospitalized.[17] He was hospitalized again in October. Due to his medical condition, respondent's partner was unable to work from September until mid-December 1998, and respondent was forced to carry on the practice for both of them.
23 In a letter to the Tenth Circuit after he received the show-cause order, respondent set out his partner's health problem and asked for additional time to respond. The Court granted him a two-week extension. At no time after obtaining this extension did respondent either submit a response or seek an additional extension of time. Respondent attributes his noncompliance with the show-cause order to the overwhelming work load that his partner's illness shifted to him. While the demands of respondent's active *559 practice on behalf of two lawyers do not excuse his failure to either respond to the show-cause order or communicate to the Tenth Circuit his reasons for being unable to respond, they do operate to mitigate his culpability for this dereliction during the period of his partner's absence.
$24 Although respondent's partner returned to the practice in December 1998,[18] respondent's noncompliance with the show-cause order extended right up to the date he was suspended in February 1994. While respondent's culpability for noncompliance with the Tenth Circuit's order may be mitigated by his partner's absence between September and mid-December, respondent has offered us no explanation in mitigation of his failure to respond to the federal court's order after his partner's return.
4 25 In mitigation of his unauthorized practice of law in the Tenth Circuit in 1997, respondent asks us to consider his daughter's premature birth, which coincided with the inception of the Bailey appeal. The record shows that respondent's daughter was born prematurely on 7 March 1997. Respondent informs us in his brief and in his testimony that the care required by his premature baby left him exhausted.[19] In some measure, respondent attributes his unauthorized practice of law to the stress and fatigue he experienced in connection with the birth and care of his premature baby. We have taken respondent's preoccupation with his daughter's care into consideration in assessing an appropriate discipline.
1 27 The trial panel in its report points out that the Tenth Circuit's order suspending respondent in 1994 failed to designate the length of respondent's suspension. This omission, says the trial panel, made it impossible for respondent to know how to comply with the Tenth Circuit's rule on reinstatement, which ties the appropriate procedure to the length of a suspension.[21] We would point out that respondent's problem was not that he mistakenly used the wrong procedure or that he did not know which procedure to use. His problem-and the reason he is before us today-is that he deliberately chose mot to follow any procedure. Rather, he resumed practice without complying with even the minimal procedure applicable to a suspension of six months or less. We hence do not believe that the Tenth Circuit's omission of the length of respondent's suspension has any relevance to our evaluation of his misconduct.
126 The trial panel also accepted the parties' stipulation in mitigation that respondent has fully cooperated with the Office of the General Counsel, notwithstanding three "misrepresentations or inconsistencies" appearing in various documents prepared by respondent or on his behalf.[20] 'We agree that respondent has fully cooperated in the sense that he has provided timely responses to the Bar and to this Court and has answered all questions asked of him.
B.
Additional Mitigating Factor Raised by The Trial Panel
*560 c.
Other Mitigating Factors
{28 In addition to the agreed factors in mitigation, the record contains numerous affidavits from respondent's colleagues attesting to his honesty, integrity, and competence. We have duly noted the esteem in which many of respondent's peers hold him. Respondent has also pointed out that none of his clients was harmed by his misconduct in the Tenth Circuit. While this may be true, its mitigating effect is minimal for the reason that respondent's conduct exposed his clients to the risk that their right to appeal could be adversely affected. Moreover, while no client may have been harmed, respondent's repeated disregard of court rules and orders was detrimental to the administration of judicial process. Finally, we acknowledge that respondent has never before been disciplined by this court and that he has exhibited remorse for his conduct.
VII
RESPONDENTS MISCONDUCT WARRANTS A PUBLIC REPRIMAND TOGETHER WITH PAYMENT OF THE COSTS OF THIS PROCEEDING
129 A license to practice law is not conferred for the benefit of the licensee, but for that of the public. The disciplinary process, including the imposition of a disciplinary sanction, is designed not to punish the delinquent lawyer, but to safeguard the interest of the public, the judiciary, and the legal profession.[22] Disciplinary sanctions not only serve to deter the offending lawyer from committing similar acts in the future, but also operate to put others on notice that departures from ethical norms will not be tolerated.[23] The disciplinary measure imposed upon an offending lawyer should be consistent with the discipline imposed upon other lawyers for similar acts of professional misconduct.[24]
T 30 The trial panel recommended that respondent be publicly censured. We agree. Respondent's failure to inform the Bar on two occasions that he had been disciplined by the Tenth Circuit, while sanctionable, was not a deliberate effort at concealment, but rather occurred as the result of ignorance. Under these circumstances, this dereliction does not warrant a severe sanction. That respondent's discipline in this case is in part attributable to his failure to notify the Bar of the Tenth Circuit's action stands as warning enough for other practitioners that they must familiarize themselves with their obligations under Oklahoma's disciplinary regime.
The Tenth Cireuit's disbarment order is prima facie proof that respondent engaged in the unauthorized practice of law during a period of suspension. Disregard of a suspension order is a serious matter and for that disregard the Tenth Circuit has imposed the ultimate disciplinary sanction on respondent. Respondent twice failed to respond to the Tenth Cireuit's show-eause orders, depriving himself of the opportunity to explain his conduct and mitigate the disciplinary sanctions visited upon him in that jurisdiction. He has taken advantage of that opportunity before this court, which as a result views his disciplinary problems in the Tenth Circuit as warranting a less severe discipline than that meted out by the other court.
T32 Having considered all the cireum-stances surrounding respondent's misconduct, including the wilfulness and seriousness of the violations, extenuating and mitigating factors, respondent's lack of ethical violations both before and after the commencement of *561 this proceeding, his cooperation with the Bar's disciplinary process, and his obvious remorse for his conduct, we conclude that public censure together with the imposition of the costs of this proceeding is the appropriate disciplinary measure.[25]
VIII
SUMMARY
€88 In a reciprocal disciplinary proceeding, it is within this court's discretion to visit the same discipline as that imposed in the other jurisdiction or one of greater or lesser severity. The discipline imposed by the Tenth Cireuit-disbarment-is too severe. Public censure is sufficient to satisfy the legitimate goals of administering professional discipline to errant lawyers and of deterring similar conduct by others. We hence conclude that respondent is to be publicly censured and ordered to pay the costs of this proceeding.
34 RESPONDENT IS ORDERED DISCIPLINED BY PUBLIC CENSURE AND IS DIRECTED TO PAY THE COSTS OF THIS PROCEEDING, WHICH SHALL BE DUE NOT LATER THAN NINETY DAYS AFTER THIS OPINION BECOMES FINAL.
1 35 HARGRAVE, C.J., WATT V.C.J., and HODGES, LAVENDER, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.
1 36 OPALA, J., dissents in part.

. The record consists of a pre-trial order, the parties' stipulations, a transcript of the hearing held before a trial panel of the Professional Responsibility Tribunal, exhibits offered by both parties, which were admitted into evidence at that hearing, respondent's 7 May 1999 reply brief with attached exhibits, which was admitted into evidence by order of the trial panel's presiding master as a supplement to the record of the proceedings before the panel, and the Report of the Professional Responsibility Tribunal.

. The provisions of Rule 7.7(a), Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. Supp. 1992 Ch. 1, App.1-A, state:
"It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline."

. The provisions of RGDP Rule 7.7(b), 5 O.S. Supp.1992 Ch. 1, App.1-A, state:
"When a lawyer has been adjudged guilty of misconduct in a disciplinary proceeding, except contempt proceedings, by the highest court of another State or by a Federal Court, the General Counsel of the Oklahoma Bar Association may cause to be transmitted to the Chief Justice a certified copy of such adjudication and the Chief Justice shall direct the lawyer to appear before the Supreme Court at a time certain, not less than ien (10) days after mailing of notice, and show cause, if any he/ she has, why he/she should not be disciplined. The documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described. The lawyer may submit a certified copy of the transcript of *554 the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/ her, a brief and/or any evidence tending to mitigate the severity of discipline. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline."

. The Bar has also asked this court to enter an order that respondent be assessed the costs of this proceeding. Today's disposition orders respondent to pay costs.

. See RGDP Rule 7.7(b) supra note 3.

. See Matter of Beren, 178 Ariz. 400, 874 P.2d 320, 322 (Ariz.1994).

. The Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." It requires the states to accord interjurisdictional preclusion to the judicial acts of other states. The full faith and credit statute, 28 U.S.C. § 1738, enacted by Congress in 1790, additionally requires all state and federal courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state.

. Neither the Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, nor the full faith and credit statute, 28 U.S.C. § 1738, by its terms imposes any obligation on state courts to give preclusive effect to federal court judgments. Nevertheless, the United States Supreme Court in a series of early cases held that those provisions require states to afford preclusive effect to federal adjudications. See Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 129-30, 32 S.Ct. 641, 56 L.Ed. 1009 (1912); Hancock Natl. Bank v. Farnum, 176 U.S. 640, 645, 20 S.Ct. 506, 44 L.Ed. 619 (1900); Phoenix Fire & Marine Ins. Co. v. Tennessee, 161 U.S. 174, 185, 16 S.Ct. 471, 40 L.Ed. 660 (1896). While the Court's reasoning in these cases has been sharply criticized, the result is generally acknowledged to be correct, albeit on other constitutional and/or statutory grounds. See, eg., Joan Steinman, The Newest Frontier of Judicial Activism: Removal Under the All Writs Act, 80 B.U.L.Rev. 773, 883, n. 56 (June 2000) (taking note of recent literature exploring the extension of full faith and credit principles to federal judgments in subsequent state proceedings); Howard Erichson, Interjurisdictional Preclusion, 96 Mich. L.Rev. 945, 986 (1998) ("If a state court ever failed to ... [give effect to a federal court judgment], it would be inconceivable that the United States Supreme Court would be powerless to reverse, and commentators have offered sound explanations for imposing a federal-state preclusion obligation on the states as a matter of federal law."); Allan D. Vestal, Protecting A Federal Court Judgment, in 42 Tenn. L.Rev. 635 (1975). Oklahoma has recognized the binding effect of federal court decisions in our own state proceedings. Veiser v. Armstrong, 1984 OK 61, ¶ 7, n. 5, 688 P.2d 796, 799, n. 5 ("When a federal-court judgment is attacked collaterally in a state court, it is entitled to the same faith and credit as that given to it under the applicable federal law."). Accord Watkins v. Resorts Int'l. Hotel & Casino, 124 N.J. 398, 591 A.2d 592, 598 (1991) ("'When a state court considers the binding effect of a federal court judgment, nothing less is at stake than the integrity of federal judicial power and the coherence of the federalist judicial system."); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 784 (3d Cir.1994); Bardo v. Pennsylvania Dep't. of Welfare, 40 Pa.Cmwlth. 585, 397 A.2d 1305, 1307 (1979).

. Nelson v. George, 399 U.S. 224, 229, 90 S.Ct. 1963, 1966-67, 26 L.Ed.2d 578 (1970); Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892).

. See also RGDP Rule 7.2, governing post-criminal conviction proceedings against a lawyer, which provides that certified copies of the indictment or information and judgment and sentence of conviction "shall ... be conclusive evidence of the commission of the crime upon which the judgment and sentence is based ...." (emphasis added); see State ex rel. Okla. Bar Ass'n. v. Livshee, 1994 OK 12, ¶ 2, 870 P.2d 770, 772 ("In a post-conviction disciplinary hearing facts that gave rise to the criminal charge, which resulted in respondent's conviction, cannot be relit-igated.").

. This limitation is set forth in Rule 7.7(b):
''The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/or any evidence tending to mitigate the severity of discipline. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline."

. The court's authority to require an adversarial hearing in a reciprocal disciplinary case is not set forth in Rule 7.7(b), but is derived from the court's exclusive original jurisdiction in bar disciplinary cases. See RGDP Rule 1.1, which states:
''This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in the State, and to discipline for cause, any and all persons licensed to practice law in Oklahoma,
See also State ex rel. Okl. Bar Ass'n v. Leigh, 1996 OK 37, ¶ 11, 914 P.2d 661, 666; State ex rel. Okl. Bar Ass'n v. Eakin, 1995 OK 106, ¶ 8, 914 P.2d 644, 647; State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 15, 880 P.2d 339, 344.

. See RGDP Rule 7.7(a) supra note 2.

. Id.

. The first error is respondent's statement in his initial brief to this court that he did not "apply to have his suspension lifted until the Spring of 1997." This statement was inaccurate in that he never applied for reinstatement in 1997 or at any other time. Respondent asserts that what he intended to convey in that statement was that he had merely asked the Tenth Circuit Court Clerk's office at that time about reinstatement. We accept respondent's explanation that his misstatement was an unintentional error resulting from a poor choice of words.
Also in error was the statement contained in the motion for reconsideration filed in the Tenth Circuit in March 1999 and in Mr. Seger's letter of 24 April 1998 to the Bar that respondent was not aware of his disbarment until he received word of it from the Bar in its letter to him of 1 April 1998. In fact, respondent received notice from the Tenth Circuit of its disciplinary action against him in January 1998. Respondent never saw the letter or motion prepared by Mr. Seger and was unaware that his attorney had misstated the facts, We accept his correction.

. State ex rel. Okla. Bar Ass'n. v. Livshee, 1994 OK 12, ¶ 7, 870 P.2d 770, 774.

. The stipulations recite that respondent's law partner was hospitalized for a heart attack on or about 1 September 1993, that he was discharged on 9 September, that he was hospitalized again on 26 October for depression, that he was discharged on 1 November, and that he returned to work in December. The stipulations state that he was incapable of practising law for more than three months. While the record supports respondent's claim that his partner had serious medical problems in the Fall of 1993, it does not bear out the details of respondent's partner's first hospitalization. These records show that on 30 August respondent's partner was admitted to the hospital suffering from depression. When hospitalized again in October, the consulting physi-clan's history omits any mention of respondent's partner suffering a heart attack in September 1993. That being said, the medical records clearly indicate that respondent's partner suffered a depressive disorder that undoubtedly interfered with his ability to work.

. We are unable to determine from the record precisely when respondent's partner returned to work, but respondent's testimony that his partner was absent for approximately three and one-half months permits us to conclude that he probably returned in mid-December.

. Respondent's statements about the time period during which his daughter's care kept him up nights are unclear. He says that she required feeding every three (3) hours for the first several weeks of her life, but then says that his sleep was affected for much of 1997. The first several weeks of the baby's life, even interpreted generously, does not coincide with "much of 1997." We recognize that all newborns require feeding every three to four hours for many weeks and that a baby's needs wreak havoc on parents' ability to rest, but we are unable to determine from the record to what extent respondent's care of his daughter was extraordinary in content or duration.

. See supra Part V of this opinion.

. The Tenth Circuit's rule on reinstatement provides:
"10.1 An attorney suspended for six months or less is automatically reinstated at the end of the period of suspension upon the filing of an affidavit of compliance with the provisions of the disciplinary order. An attorney suspended for more than six months or disbarred may not resume practice until reinstated by order of the court."

. State ex rel. Okl. Bar Ass'n v. Smith, 1980 OK 126, ¶ 21, 615 P.2d 1014, 1018; State ex rel. Okl. Bar Ass'n v. Lowe, 1982 OK 20, ¶ 19, 640 P.2d 1361, 1362.

. State ex rel. Okl. Bar Ass'n v. Cummings, 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; State ex rel. Okl. Bar Ass'n v. Hall, 1977 OK 117, ¶ 12, 567 P.2d 975, 978.

. State ex rel. Okl. Bar Ass'n v. Eakin, 1995 OK 106, ¶ 9, 914 P.2d 644, 648; State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 16, 880 P.2d 339, 345; State ex rel. Okl. Bar Ass'n v. Perceful, 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

. Factors to be taken into account in assessing an appropriate discipline are set forth in the Oklahoma Rules of Professional Conduct, 5 0.8. 1991 Ch.1, App. 3-A, Scope, which provides:
"Moreover, the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the wilfulness and seriousness of the violation, extenuating factors and whether there have been previous violations."