2005 OK 79

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Daniel Lee LOELIGER, Respondent.**

**SCBD No. 5055.**

Supreme Court of Oklahoma.

Nov. 1, 2005.

**28.** *TRW/Reda Pump v. Brewington,* see note 22, supra. See also, *Whitlock v. Bob Moore Cadillac, Inc.,* note 22, supra.

Nathan Lockhart, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Charles F. Alden, III, Oklahoma City, OK, for Respondent.

KAUGER, J.

¶ 1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Daniel Lee Loeliger, with one count of professional misconduct regarding his misrepresentation to a client that he had secured a settlement when, in fact, the case was time-barred by the statute of limitations. The Bar Association alleged that the respon-

dent's behavior involved incompetent representation,[1] ineffective communication and consultation with clients,[2] failure to expedite litigation,[3] misrepresentation of facts to his client, and engaging in conduct prejudicial to the administration of justice [4] in violation of Rules 1.1, 1.3, 1.4, 3.2, and 8.4 of the Rules of Professional Conduct and 1.3 of the Rules Governing Disciplinary Proceedings.[5]

¶2 Upon a *de novo* review,[6] we hold that: 1) clear and convincing evidence supports a determination that respondent is guilty of ethical violations; and 2) the respondent's misconduct, his lack of a prior disciplinary history, discipline administered in similar cases, and the fact that his actions did not result in any apparent economic harm to his client warrants a sixty-day suspension and the payment of $348.42 in costs.[7]

# FACTS[8]

¶3 This case arises from respondent's relationship with a single client, Charles Sullivan (Sullivan). On October 21, 1998, Sullivan was injured while operating a forklift. Sullivan retained attorney Richard Berger (Berger) to represent him in a workers' compensation claim and a separate negligence action against Westquip, the manufacturer of the forklift. Berger filed the workers' compensation action on June 25, 1999, and ultimately settled the case in November of 2000. In October 2000, Berger filed a negligence action, but decided not to handle the matter further. On February 14, 2001, Berger dismissed the case without prejudice and withdrew from representing Sullivan. Berger wrote to Sullivan, informing him that he had one year to refile the case or it would be

1. Rule 1.1, Rules of Professional Conduct, 5 O.S. 2001, Ch.1, App. 3–A provides:

 "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."
 Rule 1.3, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3–A provides:
 "A lawyer shall act with reasonable diligence and promptness in representing a client."

2. Rule 1.4, Rules of Professional Conduct, 5 O.S. 2001, Ch.1, App.3–A provides:

 "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable request for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

3. Rule 3.2, Rules of Professional Conduct, 5 O.S. 2001, Ch.1, App.3–A provides:

 "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

4. Rule 8.4, Rules of Professional Conduct, 5 O.S. 2001, Ch.1, App. 3–A provides in pertinent part:

 "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another . . .
 (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice . . . "

5. Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch.1, App. 1–A provides:

 "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

6. *State ex rel. Oklahoma Bar Ass'n v. Erickson,* 2001 OK 66, ¶14, 29 P.3d 550; *State ex rel. Oklahoma Bar Ass'n v. Israel,* 2001 OK 42, ¶13, 25 P.3d 909; *State ex rel. Oklahoma Bar Ass'n v. Smolen,* 2000 OK 95, ¶7, 17 P.3d 456.

7. Rule 6.12(c), Rules Governing Disciplinary Proceedings provides:

 "To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."
 Rule 6.6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch.1, App. 1–A.
 *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 1997 OK 47, ¶1, 937 P.2d 988; *State ex rel. Oklahoma Bar Ass'n v. Meek,* 1996 OK 119, 927 P.2d 553; *State ex rel. Oklahoma Bar Ass'n v. Holden,* 1995 OK 25, ¶1, 895 P.2d 707.

8. The facts are a compilation of the parties' stipulations, the trial panel report, July 14, 2005, and transcript of proceedings, June 24, 2005. The stipulated facts are not inconsistent with any facts otherwise established by the record.

time-barred.[9]

¶ 4 In August of 2001, Sullivan met with respondent to discuss representation of Sullivan's negligence claim. Respondent asked for Sullivan's hospital records and workers' compensation records. Sullivan contends that he signed a contingency fee contract with respondent at this time. Respondent insists that no contract was ever signed.[10] To date, no such contract has been found. After the initial meeting, Sullivan dropped off the documents at respondent's office, but they did not personally meet.

¶ 5 In October of 2001, Sullivan indicated to respondent that he would like to finish the case before the end of 2002. On January 18, 2002, respondent's father died of a sudden and unexpected heart attack. Respondent did not file any action on Sullivan's behalf before or after Sullivan's negligence claim became time-barred on February 14, 2002.

¶ 6 The next time respondent spoke to Sullivan, some six months later, respondent told Sullivan that he was negotiating with Westquip. Respondent informed Sullivan that Westquip had only offered a fifteen thousand dollar ($15,000) settlement. Respondent also confirmed to Sullivan that a claim had been filed on his behalf in federal court, when in fact, no such suit had been filed. Over the next eighteen months respondent continued to mislead Sullivan, telling Sullivan in October of 2003, that he and Westquip were still locked in heated negotiations over the negligence claim.

¶ 7 In January of 2004, Sullivan again asked for assurance from respondent that the case had been filed. Again, respondent misled his client, claiming that settlement negotiations were in their final stages and reassuring Sullivan that his petition had been filed. Sullivan requested a copy of the peti-

tion and on February 26, 2004, respondent faxed him the original petition filed by Berger some three years earlier. On the same day, respondent and Sullivan again discussed the alleged $15,000 settlement offer. Within days, respondent called to inform Sullivan that Westquip's offer was $5,800.

¶ 8 Finally, on March 2, 2004, respondent informed Sullivan that Westquip had increased its offer to $7,400. On March 7, 2004, Sullivan went to respondent's office where respondent tendered a check for $7,400. The check was funded by respondent's personal bank account. At this time, respondent also required Sullivan to sign a release form, which allegedly absolved Westquip of all liability in consideration of the $7,400 "settlement."

¶ 9 Respondent's inconsistent behavior aroused Sullivan's suspicion, prompting Sullivan to discover, via the internet, that respondent had never filed the claim against Westquip. Sullivan filed a grievance with the Bar Association on June 30, 2004. The Bar Association forwarded the grievance to the respondent on August 2, 2004, requesting a reply within two weeks. The Bar Association sent another letter on August 27, 2004, indicating that it had received only a partial, incomplete fax on the matter, and asking for a written response in five days. The Bar Association received a partial response from the respondent on September 7, 2004, which was dated August 16, 2004. On September 14, 2004, the Bar Association notified the respondent that it was opening the matter for a formal investigation. The Bar Association sent a final request for a response on October 6, 2004, and the respondent sent a second response letter to the Bar Association, which was received on October 12, 2004.

¶ 10 On May 10, 2005, the Bar Association filed this cause as a Rule 6 proceeding.[11]

---

9. The letter from Berger, dated January 30, 2001, provides in pertinent part:

   "... You will have one year from dismissal to re-file the case ... You must remember that you only have one (1) year from the dismissal date to file or you will be barred ..."

10. Transcript of proceedings, July 24, 2005, Daniel Loeliger testifying in pertinent part at p. 29:

    "... Q Did you ask him to sign a fee contract at this time?

    A No...."

11. Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A provides:

    "Formal proceedings in matters involving misconduct by lawyers shall be brought by direction of the Professional Responsibility Commission."

The respondent admitted and stipulated that his conduct violated the mandatory provisions of the Rules of Professional Conduct, with the exception of Rule 8.4(c).[12] A hearing was conducted before the trial panel on June 24, 2005, at which the respondent and his law partner were the only witnesses and the agreed stipulations were introduced as evidence.

¶ 11 At the hearing, the respondent testified regarding the circumstances surrounding the incident. He expressed remorse, acknowledged his wrongdoing and recognized how his behavior reflected poorly on the entire Bar. The respondent's law partner testified that the respondent personally disclosed the matter to him and that, regardless of what discipline was imposed, he would be willing to work with the respondent again.

¶ 12 On July 14, 2005, the trial panel filed its report, relying on the respondent's testimony and the agreed stipulations of the parties. It found that the respondent's misconduct violated the provisions of Rules 1.1, 1.3, 1.4, 3.2, and 8.4(a) and (d) of the Rules of Professional Conduct and Rule 1.3, Rules Governing Disciplinary Procedures, but made no specific finding regarding a violation of Rule 8.4(c).[13] Although the Bar Association argued for a suspension of sixty days as an appropriate sanction, the trial panel recommended discipline by public censure and the imposition of costs.

¶ 13 The Bar Association filed its brief-in-chief and an unopposed application to assess costs on August 10, 2005. The respondent filed his response brief on August 25, 2005. On September 2, 2005, the Bar Association waived the opportunity to file a response brief.

## I.

¶ 14 **CLEAR AND CONVINCING EVIDENCE SUPPORTS A DETERMINATION THAT RESPONDENT IS GUILTY OF ETHICAL VIOLATIONS.**

¶ 15 In disciplinary matters, this Court possesses exclusive original jurisdiction.[14] We are not bound by agreed findings, conclusions of law or recommendations for discipline.[15] Rather, the ultimate responsibility for imposition of professional discipline is solely within the purview of this Court.[16] In considering the record before us, as well as the recommendations of the Professional Responsibility Tribunal, our standard of review is *de novo*.[17] Before we may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[18] The function of disciplinary proceedings is not punishment. Here, the purpose of discipline is to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[19]

12. Loeliger answered the Bar Association's complaint on May 27, 2005, admitting to violations of Rules 1.1, 1.4, 3.2 and 8.4(a) and (d) of the Rules of Professional Conduct, 5 O.S.2001, Ch.1, App. 3–A, see notes 1–4, supra. However, he did not stipulate to a violation of Rule 8.4(c), 5 O.S.2001, Ch.1, App.3–A, see note 4, supra.

13. See Rules cited in notes 1–5, supra.

14. Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch.1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Holden,* see note 7, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian,* 1989 OK 16, ¶ 5, 770 P.2d 892.

15. *State ex rel. Oklahoma Bar Ass'n v. Erickson,* 2001 OK 66, ¶ 14, 29 P.3d 550; *State ex rel. Oklahoma Bar Ass'n v. Israel,* see note 6, supra.

16. *State ex rel. Oklahoma Bar Ass'n v. Israel,* see note 6, supra; *State ex rel. Oklahoma Bar Ass'n v.*

*Bolusky,* 2001 OK 26, ¶ 14, 23 P.3d 268; *State ex rel. Oklahoma Bar Ass'n v. Dershem,* 2001 OK 7, ¶ 12, 21 P.3d 639.

17. *State ex rel. Oklahoma Bar Association v. Farrant,* 1994 OK 13, ¶ 7, 867 P.2d 1279; *State ex rel. Oklahoma Bar Association v. Gasaway,* 1991 OK 33, ¶ 9, 810 P.2d 826; *State ex rel. Oklahoma Bar Association v. Braswell,* 1983 OK 63, ¶ 9, 663 P.2d 1228.

18. Rule 6.12, Rules Governing Disciplinary Proceedings, see note 7, supra; *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* see note 7 supra; *State ex rel. Oklahoma Bar Ass'n v. Meek,* see note 7, supra; *State ex rel. Oklahoma Bar Ass'n v. Holden,* see note 7, supra.

19. *State ex rel. Oklahoma Bar Association v. Meek,* see note 7, supra; *State ex rel. Oklahoma Bar Association v. Bolton,* 1995 OK 98, ¶ 12, 904 P.2d 597; *State ex rel. Oklahoma Bar Association*

¶ 16 Respondent did not diligently and promptly represent his client. Rule 1.3 of the Rules of Professional Conduct states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Although it is disputed as to when the respondent's representation of Sullivan began, it is undisputed that respondent was aware of Sullivan's genuine belief that such a relationship existed prior to February of 2002. The record also clearly establishes that respondent failed to take any action whatsoever on behalf of his client prior to February of 2002. Accordingly, there was a clear violation of Rule 1.3 of the Rules of Professional Conduct.

¶ 17 Respondent failed to keep his client reasonably informed and to expedite litigation, pursuant to rules 1.4 and 3.2 of the Rules of Professional Conduct.[20] On numerous occasions Sullivan asked respondent to confirm that his claim had been filed. Each time Sullivan asked for respondent's assurance, respondent replied that he had filed the claim in federal court. No claim was ever filed in either federal or state court by respondent. Despite Sullivan's many requests for updates on the status of his claim, respondent either failed to respond or misled Sullivan, claiming that fictitious negotiations were under way. Respondent went so far in his charade as to fabricate, and require Sullivan to sign, a settlement agreement and release form indemnifying Westquip of any further obligation toward Sullivan.

¶ 18 In February of 2004, two years after the tolling of the statute of limitations in Sullivan's negligence claim, Sullivan requested a copy of the petition, which respondent had allegedly filed in federal court. Three days later, respondent faxed a copy of a petition filed by Berger, Sullivan's previous attorney. Respondent sent the petition with the knowledge that it had been filed and dismissed more than three years prior. Respondent's egregious behavior steps far beyond failure to inform and apprise one's client. Respondent acted to affirmatively deceive his client for more than two years. Such behavior is a clear violation of Rule 1.4 of the Rules of Professional Conduct.

¶ 19 Respondent's misrepresentations to his client rise to the level of "dishonesty, fraud, deceit, or misrepresentation" pursuant to Rule 8.4(c).[21] A misrepresentation must be shown by clear and convincing evidence that the declarant had an underlying evil or bad intent for misrepresenting facts to his client.[22] Our inquiry into improper motive requires that we first ascertain how, and to what extent, respondent stood to benefit from his misrepresentation.[23] Respondent's intent is clear from his testimony: he misrepresented facts to his client in the interest of self-preservation.[24] Respondent admits to falsely assuring his client that negotiations were underway. Respondent was aware at all times that the statute of limitations barred his client from any further legal actions related to his claim against Westquip. Respondent went so far as to require his client to sign a release that respondent knew to be false. Lastly, respondent tendered a bogus settlement check to his unknowing client. If believed, respondent's misrepresentation would have prevented this claim from ever being heard by this Court.[25] Re-

v. *Donnelly*, 1992 OK 164, ¶ 11, 848 P.2d 543; *State ex rel. Oklahoma Bar Association v. Colston*, 1989 OK 74, ¶ 20, 777 P.2d 920.

20. Rule 1.4, Rules of Professional Conduct, 5 O.S.2001, Ch.1, App.3–A, see note 2, supra; Rule 3.2, Rules of Professional Conduct, 5 O.S.2001, Ch.1, App.3–A, see note 3, supra.

21. Rule 8.4, Rules of Professional Conduct, see note 4, supra.

22. *State ex rel. Oklahoma Bar Association v. Johnston*, 1993 OK 91, ¶ 16, 863 P.2d 1136; *State ex rel. Oklahoma Bar Association v. Todd*, 1992 OK 81, ¶ 5, 833 P.2d 260.

23. *State ex rel. Oklahoma Bar Association v. Johnston*, see note 22, supra at ¶ 17, n. 23.

24. Transcript of proceedings, June, 24, 2005, Daniel Loeliger testifying in pertinent part at pg.33:
"... Q I suppose it's accurate that in putting together this transaction and the issue here, aside from the fact that you felt terrible for Mr. Sullivan, there is an element of self-preservation on your part, would that be right?
A Certainly. Certainly...."

25. Respondent's failure to successfully deceive his client does not enter into our calculus for purposes of determining whether or not his actions were motivated by an impermissible intent.

spondent clearly violated Rule 8.4(c) by making misrepresentations to his client to avoid discipline.

## II.

¶ 20 **RESPONDENT'S MISCONDUCT WARRANTS A SIXTY–DAY SUSPENSION AND THE IMPOSITION OF COSTS.**

¶ 21 The Bar argues that respondent should be suspended for sixty days. The respondent contends that the professional responsibility tribunal's recommended public reprimand is appropriate punishment. Respondent does not oppose the imposition of costs.

¶ 22 This Court has not considered facts identical to those presented. However, in similar situations, we have administered discipline ranging from a public reprimand to a two-year suspension.[26] Discipline is administered on a case-by-case basis to deter future

impermissible conduct and it is designed to guarantee that the attorney is aware that such conduct is intolerable.[27] Mitigating circumstances weigh into the calculus for determining the appropriate discipline for the attorney's conduct.[28]

¶ 23 Respondent's actions, although a clear violation of the high standards of the legal profession, are not without mitigating circumstances. Respondent has never been disciplined before. Although motivated by respondent's desire to disguise his own negligence, apparently this negligence did not lead to any grave economic harm to the client. We agree with the finding of the tribunal that the shock of respondent's father's sudden death mitigates his failure to file the common law action in a timely fashion. However, we also concur with the tribunal's finding that respondent's loss in no way excuses or mitigates any actions he took to continue his charade after his failure to file

26. *State ex rel. Oklahoma Bar Association v. Rozin*, 1991 OK 132, ¶ 9, 824 P.2d 1127 [Attorney's failure to appear at a hearing and forgery of court documents to further hide his misconduct, mitigated by attorney's unemployment stemming directly from the litigation warranted a sixty-day suspension from the practice of law.]; *State ex rel. Oklahoma Bar Association v. Donnelly*, see note 4, supra [Public Reprimand and payment of costs imposed for misrepresenting to clients that a default judgment had been awarded to clients when, in fact, nothing was ever filed on clients' behalf mitigated by attorney's alcoholism.]; *State ex rel. Oklahoma Bar Association v. Busch*, 1993 OK 72, ¶ 17, 853 P.2d 194 [Ninety-day suspension and a one-year probation imposed for failure to timely file a claim and then paying client a settlement fee for indemnity without advising client to seek legal representation mitigated by the fact that tenured settlement was reasonable, lawyer did not act out of selfish motive, and respondent's mother was ill during the time of the misconduct.]; *State ex rel. Oklahoma Bar Association v. Thompson*, 1993 OK 144, ¶ 15, 864 P.2d 339 [Ninety-day suspension imposed for attorney's failure to appear in court that resulted in a default judgment against attorney's client and attorney's misrepresentation to the Bar Association mitigated by attorney's alcoholism.]; *State ex rel. Oklahoma Bar Association v. Bolton*, 1994 OK 53, ¶ 25, 880 P.2d 339 [Attorney's failure to serve his client's answers to interrogatories, failure to secure a modification of a temporary order granting custody to provide for child support, failure to allow his client more than one night to prepare responses to interrogatories, failure to appear at a client's pre-trial hearing,

and failure to respond to inquiries from the Bar Association resulted in a ninety-day suspension with costs imposed.]; *State ex rel. Oklahoma Bar Association v. Holden*, see note 7, supra [Suspension for two years and one day was warranted for attorney's unauthorized practice of law while suspended, delay in paying costs of prior disciplinary proceeding, misrepresentation of his actions in response to Bar Association's grievance inquiries, and the existence of repeated disciplinary actions against him.]; *State ex rel. Oklahoma Bar Ass'n v. Giessmann*, 948 P.2d 1227, ¶ 13, 948 P.2d 1227 [Attorney's failure to prosecute a probate claim and misrepresentation to client about the same matter in addition to two prior disciplinary actions against attorney, warranted a ninety-day suspension.]; *State ex rel. Oklahoma Bar Association v. Jaques II*, 2000 OK 57, ¶ 26, 11 P.3d 621 [Attorney's employee's intentional forging of a notary public's signature, in light of his actions not being motivated by personal gain, warranted a 30–day suspension.]; *State ex rel. Oklahoma Bar Association v. Bolusky*, see note 16, supra [Attorney failed to provide three separate clients with information regarding the status of a case warranted a two year suspension in light of attorney's clinically diagnosed depression.].

27. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 1997 OK 55, ¶ 15, 938 P.2d 744.

28. *State ex rel. Oklahoma Bar Ass'n v. Southern*, 2000 OK 88, ¶ 35, 15 P.3d 1; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2000 OK 35, ¶ 33, 4 P.3d 1242.

Sullivan's claim in a timely manner. Further, payment to Sullivan, out of respondent's own finances, is indicative of respondent's desire to remedy his negligence. However, respondent's behavior is an inexcusable violation of his client's trust and will not be tolerated by this Court.

## CONCLUSION

¶ 24 This Court is the sole arbiter of bar discipline.[29] We are free to attribute as much weight to the trial panel's recommendations as we see fit.[30] The trial panel recommended, as appropriate punishment, public censure and the payment of costs. We disagree. We determine that, given respondent's misconduct, his lack of prior disciplinary history, and discipline administered in similar cases, respondent's conduct warrants a sixty-day suspension and the payment of $348.42 in costs.

**RESPONDENT SUSPENDED; COSTS IMPOSED.**

WINCHESTER, V.C.J., LAVENDER, HARGRAVE, EDMONDSON, COLBERT, JJ., concur.

OPALA, J., with whom WATT, C.J., joins, dissenting. I would impose a more severe discipline.

TAYLOR, J., dissents.

TAYLOR, J., dissenting.

¶ 1 I would suspend the Respondent for at least one year due to his unprecedented, complex, detailed, deceitful and devious montage of lies that went on and on over two years. The client he was sworn to protect became a victim of a selfish and tangled web spun by a lawyer who has shamed his profession.

---

**29.** *State ex rel. Oklahoma Bar Ass'n v. Rennie,* 1997 OK 108, ¶ 20, 945 P.2d 494; *State ex rel. Oklahoma Bar Ass'n v.Butler,* 1992 OK 150, ¶ 9, 848 P.2d 540.

**30.** *State ex rel. Oklahoma Bar Ass'n v. Rennie,* see note 29, supra; *State ex rel. Oklahoma Bar Ass'n v. Wilkins,* 1995 OK 59, ¶ 12, 898 P.2d 147.