STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIERHART



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIERHART

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIERHART
2020 OK 72
Case Number: SCBD-6848
Decided: 09/15/2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 72, __ P.3d __

 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
DOUGLAS MARK GIERHART, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, charged Respondent, Douglas Mark Gierhart, with three counts of professional misconduct including failure to competently and diligently represent his clients, failure to communicate, collecting an unreasonable fee, mishandling client property, engaging in dishonest conduct, and commission of an act contrary to prescribed standards of conduct. The Trial Panel recommended Respondent be suspended for two years and one day. We hold there is clear and convincing evidence that the totality of Respondent's conduct warrants suspension for two years and one day. Respondent is ordered to pay the costs as herein provided within ninety days after this opinion becomes final.

RESPONDENT SUSPENDED TWO YEARS AND ONE DAY AND ORDERED TO PAY COSTS

Peter Haddock, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Timothy D. Beets, Midtown Attorneys, P.C., Oklahoma City, Oklahoma, for Respondent.

Rowe, J.:

¶1 Complainant, State of Oklahoma ex rel. Oklahoma Bar association began disciplinary proceedings pursuant to Rule 6, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2011 ch. 1, app. 1-A, alleging three counts of professional misconduct against Respondent, Douglas Mark Gierhart. Respondent is an active member of the Oklahoma Bar Association and is currently in good standing. Complainant's allegations arise in part from Respondent's mishandling of funds belonging to two clients. Complainant alleges Respondent's actions are in violation of the Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S.2011, ch. 1, app. 3-A, and the RGDP and are cause for professional discipline.

Procedural History

¶2 In April 2018, two grievances were filed with the Complainant against Respondent, one by a former employee of Respondent and one by a contractor with whom Respondent dealt during the probate of a client's estate. On April 25, 2018, Complainant opened a formal investigation into the allegations made by Respondent's former employee. After receiving Respondent's responses to both grievances, Complainant filed its formal Complaint on October 3, 2019, which contained three counts of alleged misconduct. Respondent filed an answer to the Complaint on October 23, 2019.

¶3 On November 19, 2019, the Professional Responsibility Tribunal ("Tribunal") held a hearing on the allegations contained in the Complaint, pursuant to Rule 6, RGDP. On January 6, 2020, the Tribunal filed its report wherein it found that Complainant had established by clear and convincing evidence that Respondent violated Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), 1.15(d), 8.4(a), and 8.4(c), ORPC, and Rule 1.3, RGDP. The Tribunal unanimously recommended that Respondent be suspended from the practice of law for two years and one day. On January 8, 2020, the Tribunal issued a corrected report; the Tribunal's findings and recommendation were unchanged.

Standard of Review

¶4 This Court possesses exclusive jurisdiction in Bar disciplinary proceedings. State ex rel. Oklahoma Bar Ass'n v. Holden, 1995 OK 25, ¶ 10, 895 P.2d 707, 711. We review the evidence de novo to determine whether the Bar has proven its allegations of misconduct by clear and convincing evidence. Rule 6.12(c), RGDP; State ex rel. Oklahoma Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 7, 23 P.3d 268, 272. Clear and convincing evidence is "that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." State ex rel. Oklahoma Bar Ass'n v. Green, 1997 OK 39, ¶ 5, 936 P.3d 947, 949.

¶5 Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish attorneys. State ex rel. Oklahoma Bar Ass'n v. Kinsey, 2009 OK 31, ¶ 15, 212 P.3d 1186, 1192. We consider the discipline previously imposed for similar professional misconduct to ensure that discipline is administered uniformly. Id. ¶ 16, 212 P.3d at 1192 (citing State ex rel. Oklahoma Bar Ass'n v. Doris, 1999 OK 94, ¶ 37, 991 P.2d 1015, 1025). Discipline, however, is decided on a case-by-case basis to account for differences in the offending conduct and mitigating circumstances. Id.

Background

I. Count I: Estate of Miriam Felty

¶6 Miriam Felty died intestate while residing in Oklahoma. Her daughter and sole heir, Wendy Reed, retained Respondent to probate the Felty estate. On September 15, 2015, Respondent filed a Petition for Probate, Determination of Heirs, and Issuance of Letters of Administration in Oklahoma County. That same day, at the suggestion of Respondent, Leslie Withee, a paralegal in Respondent's office, was nominated by Reed to serve as administratrix of the Felty estate.[1] On October 21, 2015, the court entered an Order Admitting the Estate to Probate and Issuance of Letters of Administration appointing Withee as administratrix.

¶7 The primary assets of the Felty estate included two residences, referred to in the parties' briefs as "63rd Street" and "Federal Court;" Tinker Federal Credit Union ("TFCU") accounts totaling $12,584.52; and life insurance proceeds in the amount of $10,000.00. After some necessary clean-up and repairs, both of the properties were sold with the 63rd Street property returning net proceeds of $21,469.78, and the Federal Court property returning net proceeds of $41,539.89. These funds, as well as those from the TFCU accounts and the life insurance policy, were deposited in Respondent's trust account.

¶8 In September 2016, Respondent instructed Withee, in her capacity as administratrix, to issue a check from his trust account in the amount of $2,725.00 made payable to herself and drawn against the Felty estate funds. He further instructed her to endorse the check and give it back to him. Respondent then endorsed the check and deposited it in one of his personal accounts at TFCU. Withee claimed that these funds were used by Respondent for a personal vacation.

¶9 In July 2017, Withee left her position in Respondent's law office and took a job with another firm. Despite the change in her employment, Withee remained in her position as administratrix of the Felty estate. However, because the estate funds were held in Respondent's trust account, Withee no longer had access to them. She also lost access to files relevant to the administration of the Felty estate. On January 10, 2018, Withee contacted Respondent's office and requested access to the Felty case files and the estate funds held in Respondent's trust account. Neither were produced by Respondent.

¶10 On January 25, 2018, Respondent filed a Final Account and Petition for Order Allowing Final Account, Determination of Heirship, Distribution, and Discharge, wherein he requested attorney's fees totaling $19,147.50. Respondent filed the Final Account without providing proper notice to Reed or Withee. On March 6, 2018, the court held a hearing on Respondent's proposed Final Account. Reed testified that, prior to the hearing, she received a call from Respondent's office indicating that she did not need to attend because the hearing would be continued. Neither Reed nor Withee attended the hearing. On March 9, 2018, the court entered an Order Allowing Final Account, Determining Heirs, and Final Decree of Distribution, wherein the court approved all of Respondent's requested fees. The Order Allowing Final Account was filed on March 14, 2018.

¶11 Withee learned of the Order Allowing Final Account on the day it was filed, and that same day, proceeding pro se, filed a Motion to Vacate Order Allowing Final Account. Withee then obtained new counsel, Sally Ketchum Edwards, who entered her appearance before the court on March 16, 2018. The Order Allowing Final Account was vacated by agreement on April 10, 2018. Throughout April and May 2018, Edwards wrote to Respondent on four occasions advising Respondent that she considered his fee excessive and requesting that he turn over the funds in his trust account belonging to the estate as well as any files relevant to the estate. Respondent provided some of the requested materials but failed to turn over the estate funds.

¶12 Based on the materials provided by Respondent, Withee filed an Interim Accounting on May 2, 2018. The Interim Accounting estimated that Respondent had $40,664.94 in estate funds remaining in his trust account. The Interim Accounting reflected certain errors in the Final Account filed by Respondent on January 25, 2018. Among them, the January 2018 Final Account indicated that certain administrative expenses owing to Kathy Upton (dba K&M Real Estate Investments) for work done on the 63rd Street and Federal Court properties had been paid when, in fact, they had not.

¶13 On June 7, 2018, Withee filed an Amended Interim Accounting, which indicated that Respondent should have $39,164.94 in estate assets remaining in his trust account. That same day, Withee filed a Motion to Compel Respondent to deliver those funds. On August 10, 2018, Respondent filed an objection to the Motion to Compel. Respondent included with his objection a revised Final Account showing that he had $18,451.79 in estate funds remaining in his trust account. In this revised Final Account, Respondent listed the $19,147.50 in fees he was previously awarded by the trial court as a disbursement. Taking the fees and remaining balance together, Respondent should have had $37,599.29 in estate funds remaining in his trust account.

¶14 The court held a hearing on the Motion to Compel on August 21, 2018. On the day of the hearing, Respondent filed an Application for Attorney Fees and Costs seeking $19,147.50, equal to the amount he had been awarded in the March 2018 Order Allowing Final Account. The court denied Respondent's requested fee and ordered him to turn over $37,000.00 belonging to the estate. Following the hearing, Respondent was only able to turn over $18,451.79. On September 24, 2018, Withee filed a Motion of Personal Representative for Contempt Citation to Issue to Douglas M. Gierhart because Respondent had still not paid the balance of the $37,000.00 he had been ordered to turn over by the court. Respondent eventually paid the remaining $18,548.21 on November 21, 2018. Respondent admitted during his testimony before the Tribunal that in order to pay the remaining balance, he borrowed money from family and used fees earned from unrelated cases.

II. Count II: Upton Grievance

¶15 Kathy Upton (dba K&M Real Estate Investments) was a contractor who was hired to prepare the two Felty estate properties for sale. In or around April 2018, Upton learned that Respondent had filed a Final Account with the court indicating that she had been paid for her services. On April 6, 2018, Upton filed a Claim for Administrative Expenses with the court, indicating that she was owed $4,153.98 for work done on the Federal Court property and $2,454.21 for work done on the 63rd Street property, for a total of $6,608.19. The Final Account filed by Respondent on January 25, 2018, indicated that $4,159.00 had been paid to Upton for her work on the Federal Court property and $2,454.21 had been paid to K&M Real Estate Investments for work done on the 63rd Street property. During his testimony before the Tribunal, Respondent admitted that the Final Account he originally submitted was wrong insofar that it indicated these expenses had been paid.

III. Count III: In re Madison Aelmore

¶16 In or around March 2008, Respondent filed a personal injury lawsuit in Oklahoma County on behalf of Anita Aelmore, individually and as parent and next friend of Madison Aelmore, a minor. The case was ultimately settled, and on May 1, 2008, the court entered an Order for Deposit of Settlement Proceeds. The Order approved the total settlement of $12,000.00 and authorized withdrawals of $2,207.25 to cover Madison's medical expenses and $3,625.58 to cover Respondent's attorney fee. The Order further provided that the balance, $6,167.17, would be deposited in a trust account for Madison's benefit at MidFirst Bank, and directed Respondent to provide MidFirst Bank with a copy of the Order when the deposit was made. The funds were to be held in the trust account until Madison turned eighteen.

¶17 Instead, in or around June 2008, Respondent opened a Certificate of Deposit ("CD") in his own name at Advantage Bank in the amount of $3,959.92. Respondent admitted during his testimony before the Tribunal that he did not provide Advantage Bank with a copy of the court's Order. He further admitted that he never attempted to contact Madison Aelmore or her Guardian ad litem, Anita Aelmore, when Madison turned eighteen.

¶18 The Oklahoma Bar Association ("OBA") learned of this incident in April 2018 when Withee submitted her grievance, in which she alleged that Respondent had disregarded a court order regarding the handling of settlement funds belonging to a minor and failed to deliver said funds when the minor turned eighteen. Thereafter, an OBA investigator located and contacted Madison Aelmore and suggested that she contact Respondent regarding her settlement funds. In July 2018, two months prior to Madison's twentieth birthday, Madison and her father, Bud Aelmore, met with Respondent. At this meeting, Respondent delivered a check, drawn from his trust account, to Madison Aelmore for $6,387.43, which represented Respondent's calculation of the amount she was owed. Respondent testified that the funds he placed in the CD at Advantage Bank still remain there. Respondent also admitted that he used the CD as collateral for a personal loan.

Discussion

I. Counts I and II: Mishandling of the Felty Estate

¶19 Because they both arise from Respondent's handling of the Felty estate, we will analyze the misconduct alleged under Counts I and II together. Complainant submits that Respondent's conduct with respect to Counts I and II amounts to violations of Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), 1.15(d), 8.4(a), 8.4(c), ORPC, and Rule 1.3, RGDP.

¶20 Rule 1.1 requires that a lawyer provide competent representation to a client.[2] Respondent admits in his brief that he lacked sufficient understanding of the law regarding payment of attorney's fees in probate cases, which contributed to his mishandling of the funds in this case. While Respondent's deficiencies in concluding the probate proceedings, in particular his handling of the final account, appears to be an effort on his part to hide his misappropriation (discussed infra), the Complainant has not shown these deficiencies were the result of inadequate knowledge, skill, thoroughness, or preparation. Rule 1.3 requires that a lawyer act with reasonable diligence and promptness in representing a client.[3] Complainant has not shown that Respondent's shortcomings stem necessarily from a lack of diligence or promptness. Accordingly, we cannot find by clear and convincing evidence that Respondent violated either Rule 1.1 or Rule 1.3.

¶21 Rule 1.4 requires that a lawyer maintain communication with the client, including among other things keeping the client reasonably informed of the status of the matter and promptly complying with reasonable requests for information.[4] Respondent's failure to obtain Withee's approval of the Final Account, to provide Withee and Reed with proper notice that he had filed the Final Account, and to provide Withee and Reed proper notice of the hearing on the Final Account amounts to a violation of Rule 1.4.[5]

¶22 Rule 1.5(a) prohibits a lawyer from making an agreement for, charging, or collecting unreasonable fees.[6] In total, Respondent received $5,000.00 in exchange for services rendered in the probate of the Felty estate.[7] This included a $2,500.00 payment from Reed at the outset and a final award of $2,500.00 in attorney's fee, when the estate was settled. We do not find Respondent's fee in this matter to be unreasonable, nor is the evidence sufficient to prove Respondent's originally requested fee of $19,147.50, in itself, amounts to a violation of Rule 1.5(a).[8]

¶23 Rule 1.15 relates to a lawyer's duties in safekeeping client property.[9] Violations of Rule 1.15 can be sorted into three categories: (1) commingling, (2) simple conversion, and (3) misappropriation. State ex rel. Oklahoma Bar Ass'n v. Combs, 2007 OK 65, ¶ 13, 175 P.3d 340, 346. The categories carry increasing levels of culpability, with misappropriation being the most serious. Id. Commingling occurs when client funds are combined with the lawyer's personal funds. Id. at ¶ 14, 175 P.3d at 346. Simple conversion occurs when an attorney applies a client's money to a purpose other than that for which it came to be entrusted to the lawyer. Id. at ¶ 15, 175 P.3d at 346. Misappropriation occurs when an attorney purposely deprives a client of money through deceit and fraud. Id. at ¶ 16, 175 P.3d at 346. A finding of misappropriation, regardless of exceptional mitigating factors, warrants the imposition of harsh discipline. State ex rel. Oklahoma Bar Ass'n v. Mansfield, 2015 OK 22, ¶ 18, 350 P.3d 108, 115.

¶24 In September 2016, Respondent directed Withee to issue a check for $2,725.00, drawn from the estate funds in his trust account and made payable to herself. He then directed her to endorse the check and give it back to him. Respondent deposited the check into one of his personal accounts at TFCU. This was done without court approval and well before Respondent filed his original Final Account in January 2018. Respondent's actions in this regard were clearly improper and evidence an intent to defraud. Thus, we find that Respondent misappropriated Felty estate funds in violation of Rule 1.15. 

¶25 Complainant further contends that Respondent mishandled the $18,548.21 that he was unable to turn over following the hearing on the Motion to Compel. Specifically, Complainant posits that Respondent took these funds as a fee without approval of the court. However, pursuant to the March 2018 Order Allowing Final Account, Respondent received approval, at least for a brief time, to take a fee of $19,147.50. The problem with Respondent's conduct with respect to these funds is not so much a matter of whether he had approval to take them as a fee, but rather how he obtained that approval and how he handled the funds after the March 2018 Order Allowing Final Account was vacated by agreement.

¶26 Respondent filed the Petition for Order Allowing Final Account on January 25, 2018. However, he failed to obtain Withee's approval of the Final Account, to provide Withee and Reed with proper notice that he had filed the Final Account, and to provide Withee and Reed proper notice of the hearing on the Final Account. Despite these deficiencies, the Order Allowing Final Account was entered on March 9 and filed on March 14, 2018. Thus, to the extent Respondent received approval to take the funds in question as a fee, it was improperly obtained.

¶27 Furthermore, any approval Respondent had to take this fee was remarkably short-lived. Withee learned of the Order Allowing Final Account when it was filed on March 14, 2018, and filed a Motion to Vacate that same day. The Order Allowing Final Account was vacated by agreement on April 10, 2018. Although he agreed that the Order should be vacated based on the statutory and procedural deficiencies, Respondent did not re-deposit the $19,147.50 into his trust account. Several months later, when Withee filed a Motion to Compel Respondent to deliver the estate funds in his trust account, Respondent submitted, along with his objection to the Motion to Compel, a revised Final Account that listed the $19,147.50 as a disbursement. At no point after the Agreed Order to Vacate did Respondent advise either the court or the administratrix that he intended to retain the fee. Although he had already taken the fee, on the day of the hearing on the Motion to Compel, Respondent filed an Application for Attorney Fees and Costs seeking $19,147.50. The court ultimately declined to approve the fee, and when the court ordered Respondent to turn over $37,000.00 to the estate, he could not produce $18,548.21 of that amount. He later reimbursed the estate using borrowed money and earned fees from unrelated cases.[10]

¶28 Respondent's conduct in this regard amounts to misappropriation. Most notably, his attempt to obtain the Order Allowing Final Account without providing any notice to the client or administratrix is evidence of an intent to deprive the Felty estate of the funds in question through fraud and deceit. Based on the totality of the Respondent's behavior, we find that Respondent misappropriated the $18,548.21 in violation of Rule 1.15.

¶29 Additionally, Rule 1.15(d) specifically requires that a lawyer promptly deliver to a client any funds or other property that the client is entitled to receive. Respondent failed to promptly comply with numerous requests from Withee and Edwards to turn over the Felty estate files and funds, and in doing so, he violated Rule 1.15(d).

¶30 Rule 8.4(a) prohibits a lawyer from violating or attempting to violate the Rules of Professional conduct, knowingly assisting or inducing another to do so, or doing so through the acts of another. [11] When Respondent directed Withee to issue a check for $2,725.00 unto herself, drawn from the Felty estate funds, and then endorse the check over to him, his conduct amounted to a violation of Rule 8.4(a).

¶31 Rule 8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.[12] For conduct to constitute a violation of Rule 8.4(c), it must be shown by clear and convincing evidence that the declarant engaged in misrepresentation, dishonesty, fraud and/or deceit, and that the declarant had an underlying motive, i.e., bad or evil intent. State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Siegrist, 2020 OK 18, ¶ 11, 461 P.3d 213, 218. In directing Withee to make the $2,725.00 check payable to herself and then endorse it over to him, Respondent misrepresented the purpose for which these funds would be used and to whom they were being given. Furthermore, he did so with the requisite bad intent to use them for his own personal benefit. 

¶32 Complainant further alleges that Respondent violated Rule 8.4(c) by misrepresenting to the court in the January 2018 Final Account that Kathy Upton had been paid for her services in preparing the Felty properties for sale. In this regard, the Upton Complaint was likely avoidable had Respondent not violated Rule 1.4, supra. Complainant has shown that Respondent indicated to the court that Kathy Upton had been paid when, in fact, she had not. However, Complainant has not shown by clear and convincing evidence that Respondent acted with the requisite bad intent to constitute a violation of Rule 8.4(c). Accordingly, we find that Respondent violated Rule 8.4(c) as to Count I, but not as to Count II.

¶33 Based on the foregoing, with respect to Counts I and II we find that Complainant has established by clear and convincing evidence the alleged that Respondent engaged in misconduct in violation of Rules 1.4, 1.15, and 8.4, ORPC. Furthermore, we find that Respondent has engaged in acts contrary to prescribed standards of conduct and which bring discredit upon the legal profession, in violation of Rule 1.3, RGDP.[13]

II. Count III: Aelmore Settlement

¶34 Complainant submits that Respondent's conduct with respect to Count III amounts to violations of Rules 1.3, 1.4, 1.15(a), 1.15(f), 8.4(a), 8.4(c), ORPC and Rule 1.3, RGDP.

¶35 We find that Respondent violated Rules 1.3 and 1.4 in his handling of Madison Aelmore's settlement funds. Specifically, Respondent failed to comply with almost every material provision of the court's Order for Deposit of Settlement Proceeds. Respondent deposited an amount less than what was explicitly required by the Order. He deposited the funds at a different institution than the one required by the Order. He placed the funds in a CD under his name only, rather than a trust account for the benefit of Madison Aelmore. Respondent also failed to provide Advantage Bank with a copy of the court's Order, which would have put the bank on notice that the funds did not belong to him and might have prevented him from opening the CD altogether. Respondent's inability to comply with a court order demonstrates a lack of diligence in his representation. Respondent's subsequent failure to inform Madison or her guardian ad litem as to what he had done with the funds demonstrates a lack of communication.

¶36 Respondent's mishandling of Madison Aelmore's settlement funds also amounts to misappropriation in violation of Rule 1.15. It seems clear that if Withee had not brought Respondent's misconduct to the attention of the OBA, Madison Aelmore likely would never have received her settlement funds. Furthermore, Respondent's wholesale disregard for the court's Order demonstrates that he purposely sought to deprive Madison of her property through deceit and fraud. Respondent engaged in dishonesty toward the court, the client, and the bank.

¶37 Rule 1.15(f) in particular provides:

Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien.

Respondent violated Rule 1.15(f) by failing to observe the court's Order regarding the establishment of the minor's trust account and instead establishing a CD in his own name, which he then used as collateral for a personal loan.

¶38 Respondent's conduct also amounts to a violation of Rules 8.4(a) and (c). At the very least, Respondent made misrepresentations to Advantage Bank regarding the ownership of the funds when he failed to provide the bank with a copy of the court's Order and placed them in a CD in his name only.

¶39 Based on the foregoing, we find that Complainant has established by clear and convincing evidence the alleged misconduct in Count III and that Respondent's misconduct places him in violation of Rules 1.3, 1.4, 1.15, and 8.4, ORPC. Furthermore, we find Respondent acted in a manner contrary to prescribed standards of conduct and which brings discredit upon the legal profession, in violation of Rule 1.3, RGDP.

Mitigation

¶40 Respondent has practiced law for approximately 37 years and has not previously been the subject of any formal discipline. Respondent presented two character witnesses, Joel Hall and Trace Morgan, both of whom are attorneys in good standing and both of whom testified to Respondent's general honesty and professionalism. Furthermore, Respondent notes that all parties who were harmed by his misconduct were made whole or nearly whole. Although it took several months, Respondent ultimately delivered all $37,000.00 that he was ordered to turn over to the Felty estate. Kathy Upton was ultimately paid her outstanding fees out of the Felty estate funds. Additionally, Respondent attempted to calculate the amount Madison Aelmore would have been owed had her settlement funds been handled in accordance with the court's order, and he provided her a check in that amount from his trust account.

Discipline

¶41 Our goals in bar disciplinary matters are to protect the interests of the public and preserve the integrity of the legal profession, not to punish attorneys. Kinsey, 2009 OK 31, ¶ 15, 212 P.3d 1186, 1192. With these goals in mind, we must weigh all relevant factors including those that justify severe sanctions and those that would mitigate the severity of discipline. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶ 19, 71 P.3d 1, 4. We must also weigh the deterrent effect of our discipline on the Respondent and the Oklahoma Bar as a whole. State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, ¶ 22, 71 P.3d 18, 29.

¶42 We have recently considered a number of cases involving misappropriation of client funds. In State ex rel. Okla. Bar Ass'n v. Siegrist, 2020 OK 18, 461 P.3d 203, the respondent was found to have misappropriated $1,135,000.00 as the personal representative of his father's estate and failed to competently and diligently represent a client in a separate matter. After his misconduct was brought to the attention of the OBA, the respondent failed to cooperate with the investigation, respond to grievances submitted against him, file an answer to the formal Complaint, and appear at his own disciplinary hearing. 2020 OK 18, ¶ 19, 461 P.3d 213, 219. We found that the respondent's misconduct warranted disbarment. Id. at ¶ 21, 461 P.3d at 219.

¶43 In State ex rel. Okla. Bar Ass'n v. Miller, 2020 OK 4, 461 P.3d 187, the respondent was found to have misappropriated $4,600.00 in funds acquired during the sale of assets obtained in the settlement of a personal injury lawsuit. Additionally, the respondent failed to render competent and diligent representation and communicate with her clients. 2020 OK 4, ¶¶ 29-30, 461 P.3d 187, 200. When confronted with her misconduct, the respondent failed to cooperate with and provided misleading information to the OBA during its investigation. Id. at ¶ 37, 461 P.3d at 201. We found that the respondent's misconduct warranted disbarment. Id. at ¶ 40, 461 P.3d at 202.

¶44 In State ex rel. Okla. Bar Ass'n v. Mayes, 2003 OK 23, 66 P.3d 398, the respondent was found to have misappropriated approximately $20,000.00 in funds owing to two minor children from the settlement of a wrongful death action on behalf of their mother's estate. The respondent failed to cooperate with the OBA's investigation of his misconduct. 2003 OK 23, ¶¶ 12-13, 66 P.3d 398, 403. Prior to the complaint of misappropriation, he had received a six-month suspension of his law license for failing to adequately supervise a non-lawyer office manager and improperly taking in a portion of one of his client's personal injury settlement proceeds, which were converted or commingled by the office manager. Id. at ¶ 6, 66 P.3d at 402. The respondent ultimately made partial restitution to the two minors, totaling approximately $14,000.00. Id. at ¶ 27, 66 P.3d at 408. We found that the respondent's misconduct warranted disbarment. Id. at ¶ 30, 66 P.3d at 408-09.

¶45 Cases that do not involve misappropriation but involve other forms of misconduct similar to Respondent's have yielded more disparate results. In State ex rel. Okla. Bar Ass'n v. Whitebrook, 2010 OK 72, 242 P.3d 517, the respondent failed to render competent and diligent representation, failed to communicate with his clients, and charged and collected unreasonable attorney's fees. The respondent also failed to participate in the disciplinary process at every step. 2010 OK 72, ¶¶ 10-14, 242 P.3d 517, 520. We found that his misconduct warranted a suspension of two years and one day. Id. at ¶ 26, 242 P.3d at 523. In State ex rel. Okla. Bar Ass'n v. Benefield, 2005 OK 75, 125 P.3d 1191, the respondent admitted that he had failed to competently and diligently represent his clients, failed to communicate, and charged and collected unreasonable fees. The respondent cooperated in the disciplinary proceedings and expressed remorse for his conduct, but he had a history of discipline related to client neglect. 2005 OK 75, ¶ 23, 125 P.3d 1191, 1195. We found that the respondent's misconduct warranted a one-year suspension.

¶46 Here, Complainant recommends that Respondent's license be suspended for two years and one day. We agree. A finding that an attorney misappropriated client funds warrants the imposition of harsh discipline, regardless of any mitigating factors. Miller, 2020 OK 4, ¶ 35, 461 P.3d at 201. Given the precedents above, disbarment would not be unwarranted. Respondent deprived both the Felty estate and Madison Aelmore of funds that rightfully belonged to them. His conduct demonstrated an intent to defraud, and in the case of the Aelmore settlement funds, a lack of regard for the court's orders. Respondent's misconduct, however, was not accompanied by many of the aggravating factors present in Siegrist, Miller, and Mayes. Respondent cooperated with the OBA's investigation and the disciplinary proceedings. Furthermore, he does not have a history of prior discipline, despite practicing for 37 years. 

¶47 Our primary goals in disciplinary proceedings are to protect the interests of the public while preserving the integrity of the courts and the legal profession. Kinsey, 2009 OK 31, ¶ 15, 212 P.3d at 1192. We also aim to deter future misconduct by providing notice to attorneys that the conduct in question will not be tolerated. State ex rel. Okla. Bar Ass'n v. Watkins, 2019 OK 76, ¶ 37, 463 P.3d 174, 184. Accordingly, we find that a suspension of two years and one day is appropriate to accomplish our duty of protecting the public interest and preserving the integrity of the legal profession.

Assessment of Costs

¶48 On January 7, 2020, Complainant filed an application to assess the costs of the disciplinary proceedings in the amount of $4,460.06. Respondent did not file an objection to the application. Rule 6.16, RGDP, provides that in disciplinary proceedings where discipline actually results, "the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown." Respondent is hereby ordered to pay costs in the amount of $4,460.06 within ninety days of the effective date of this opinion. Rule 6.16, RGDP.

RESPONDENT SUSPENDED TWO YEARS AND ONE DAY AND ORDERED TO PAY COSTS

Gurich, C.J, Darby, V.C.J., Winchester, Edmondson, Colbert, Kane, JJ., concur; Combs, J., recused.

Kauger, J., concurring in part, dissenting in part:

¶1 I concur that discipline should be imposed.

FOOTNOTES

[1] Although these issues were not raised by Complainant, we note the impropriety of this arrangement and the inherent conflict of interest for Withee in her dual capacities as Respondent's employee and administratrix of the Felty estate. Withee testified before the Tribunal that her interest in maintaining her employment compelled her to take actions that were not consistent with the best interests of the Felty estate.

[2] Rule 1.1, ORPC, provides, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

[3] Rule 1.3, ORPC, provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

Evident in the comments, Rule 1.3 primarily imposes an obligation on an attorney to pursue matters on behalf of clients diligently and ultimately bring them to a timely conclusion. Comment 1 indicates that a client's interests should be pursued diligently in spite of opposition, obstruction, or inconvenience. Comment 2 states a lawyer should manage his or her work load appropriately to ensure that each matter is handled competently and in a timely manner. Comment 3 notes that procrastination is perhaps the most widely resented professional shortcoming.

The emphasis on timeliness in Rule 1.3 is further born out in our prior decisions. See State ex rel. Okla. Bar Ass'n v. Miller, 2020 OK 4, 461 P.3d 187 (finding a violation where the attorney failed to timely file actions under the Oklahoma Governmental Tort Claims Act due to a leap year miscalculation); State ex rel. Okla. Bar Ass'n, 20013 OK 22, 299 P.3d 488 (finding a violation where attorney consistently missed deadlines and sought reconsideration); State ex rel. Okla. Bar Ass'n v. Loeliger, 2005 OK 79, 127 P.3d 591 (finding a violation where the attorney failed to timely file a products liability claim before the statute of limitations had run).

Therefore, in assessing potential Rule 1.3 violations, we look to see whether an attorney has failed to pursue his or her client's interests in a diligent and timely manner.

[4] Rule 1.4, ORPC, provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant information on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] In addition to demonstrating a failure of communication, Respondent's conduct in this regard was inconsistent with statutory requirements regarding the probate procedure. At the final accounting for settlement of an estate, an administrator is required to render an exhibit under oath showing the amount of money received and expended by her; the amount of all claims presented against the estate, as well as the names of the claimants; and, all other matters necessary to show the condition of the estate's affairs. 58 O.S. § 541. The Final Account Respondent submitted on January 25, 2018, was not signed by Withee when submitted to the court.

[6] Rule 1.5, ORPC, provides:

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

[...]

[7] This amount does not include the $2,750.00 Respondent misappropriated, discussed infra.

[8] Respondent did provide the trial court with a billing summary showing time entries billed at the rate of $250.00 per hour in support of his requested attorney fee.

[9] Rule 1.15, ORPC, provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

[...]

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

[....]

[10] In late 2016--more than a year prior to Respondent filing his first final account--when the Respondent should have had in excess of $51,000.00 in his trust account for the Felty estate alone, the balance of his trust account fell below $13,000.00.

[11] Rule 8.4(a), ORPC, provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

[...]

[12] Rule 8.4(c), ORPC, provides:

It is professional misconduct for a lawyer to:

[...]

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[....]

[13] Rule 1.3, RGDP, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed
 1997 OK 39, 936 P.2d 947, 68 OBJ 1288, State ex rel. Oklahoma Bar Ass'n v. Green
Cited
 1995 OK 25, 895 P.2d 707, 66 OBJ 1108, State ex rel. Oklahoma Bar Assn. v. Holden
Discussed
 2003 OK 13, 71 P.3d 1, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STEWART
Discussed
 2003 OK 23, 66 P.3d 398, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MAYES
Discussed at Length
 2003 OK 56, 71 P.3d 18, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed
 2005 OK 75, 125 P.3d 1191, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BENEFIELD
Discussed at Length
 2005 OK 79, 127 P.3d 591, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LOELIGER
Discussed
 2007 OK 65, 175 P.3d 340, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COMBS
Discussed
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed at Length
 2010 OK 72, 242 P.3d 517, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WHITEBOOK
Discussed at Length
 2013 OK 22, 299 P.3d 488, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BEDNAR
Cited
 2015 OK 22, 350 P.3d 108, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MANSFIELD
Discussed
 2019 OK 76, 461 P.3d 174, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WATKINS
Cited
 2020 OK 4, 461 P.3d 187, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MILLER
Discussed at Length
 2020 OK 18, 461 P.3d 203, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SIEGRIST
Discussed at Length
 1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, State ex. rel. Oklahoma Bar Association v. Doris
Discussed
Title 58. Probate Procedure
 Cite
Name
Level

 58 O.S. 541, Final Accounting - Waiver - Sufficiency
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA